DANIEL J. CHISHOLM'S (dependent's) CASE.

Suffolk.    December 7, 1920, April 6, 1921.— May 24, 1921.

Present: RUGG, C. J., BRALEY, DE COURCY, CROSBY, & PIERCE, JJ.

*Workmen's Compensation Act*, Presentation of certification, Appeal, Decree, To whom act applies. *Superior Court. Agency*, Existence of relation, Independent contractor.

Where, in a proceeding under the workmen's compensation act, a dependent claimant, to whom, by a decision of the Industrial Accident Board, compensation has been awarded, presents a certified copy of the decision and the papers in connection therewith to the Superior Court at a date more than ten days after the decision so that, if the parties had been notified as required by G. L. c. 152, § 10, there was no right of appeal under § 11 from any decree that might be entered therein in the Superior Court, the court has jurisdiction to hear a motion by the employer, which is supported by an affidavit that no notice was given of the decision of the board to the employer as required by § 10, and which seeks that the case be recommitted to the board for a vacation of the decision and the giving of a new decision and a proper notice thereof; and such motion properly may be granted if the facts are found to be as set out in the affidavit.

In workmen's compensation proceedings, where the employer was a town which had accepted the provisions of St. 1913, c. 807, the town made a motion, such as is described above, which was supported by an affidavit setting out in substance that its attorney of record was not able to attend to the case before the board and that another attorney had appeared in his stead, who had made it plain to the board that he was only temporarily acting in his stead and " did not intend to appear and did not appear as counsel of record in the matter." Under the general practice of the courts notices are to be sent to the attorney appearing of record.    The motion was granted.    The record did not disclose whether the judge heard the case on other evidence than the affidavit.    *Held*, that

(1) If there was before the judge other evidence than the affidavit, the decision of the judge was not reviewable;

(2) If the motion was heard on the affidavit only, it could not be said as a matter of law that it was granted improperly.

A single member of the Industrial Accident Board, to whom was referred a claim under the workmen's compensation act for compensation to be paid by a town, which had accepted the provisions of St. 1913, c. 807, for injuries resulting in death, stated in his report that "It was agreed . . . [that the employee] received a personal injury in the course of and arising out of his employment " which resulted in his death, that he " was an employee of B; that B was an independent contractor performing work for the engineers of the fire department of the town;" and the member stated the questions before him to be (1) dependency and (2)

"whether the claimant's decedent, as the employee of an independent contractor, performing work for the town, is embraced within the provisions of St. 1913, c. 807," and he ruled that that statute did not include liability under St. 1911, c. 751, Part III, § 17, and denied compensation. The case again was referred to him for the hearing of further evidence, when he found and reported that B and the employee were fellow employees of the town and that the claimant was entitled to compensation. The full board adopted such findings and rulings and in accordance therewith a decree was entered in the Superior Court from which the town appealed. *Held*, that the agreement reported by the single member of the board at the first hearing before him must be construed to mean that B was in general an independent contractor and not that he was such as to the particular work in question.

Upon an appeal from a decree of the Superior Court made in accordance with a decision of the Industrial Accident Board affirming and adopting findings of fact by a single member to whom the case had been referred, the question is not, what conclusion this court would have reached upon the evidence, but whether the decision of the board and the decree of the court were rationally possible on the evidence reported and under the law.

Upon a claim against a town under the workmen's compensation act and St. 1913, c. 807, it appeared that the employee had been furnished to the town by one B, a fire alarm electrician employing several men and doing work both as a jobber and general contractor, who was paid by the town and who paid the employee at a somewhat less rate per day than the town paid him for the employee, but who also paid for the employee's car fare and dinner; that on the morning of the accident one, who was the captain at the fire department and acting superintendent of the fire alarm system of the town, notified B that the wires were down by reason of a heavy storm and asked him to take care of them; that B, the employee, one other man and the superintendent all engaged in the work and the superintendent gave instructions as to what work should be done and where it should be done. B testified that the superintendent " had a right to exercise control over him on this particular job if he saw fit . . . did exercise control over him . . . could tell him just how he wanted the work done . . . could order him to discontinue the work at any time . . . could do the same thing with . . . [the employee] while witness [B] was present . . . has told his [B's] men the manner in which he wanted that work done and has told him the manner in which that work was to be done; as far as he knew the men have always done it." When the employee was injured, he was climbing a pole to put on a jumper in accordance with a statement made by the superintendent in his hearing, that " if they could put a jumper on the line at that point, they could close the circuit down town." The single board member found that the employee when injured was an employee of the town, the full board adopted the finding and a decree was entered accordingly in the Superior Court. *Held*, that

(1) The fact, that the employee was paid by B and not by the town, while a fact to be considered, was not decisive on the question whether the relation of master and servant existed between them;

(2) The test to determine whether B or the town was the employer was, who had direction and control of the employee and to whom did he owe obedience in respect to the particular matter at hand;

(3) It could not be said that the finding that the town was the employer of the injured man was wholly without support.

CERTIFICATION to the Superior Court under the provisions of the workmen's compensation act of a decision of the Industrial Accident Board and all papers in connection therewith upon a claim by the widow of Daniel J. Chisholm, who was alleged to have suffered injuries resulting in death while employed by the town of Lexington on August 8, 1918, the decision being that the employee when injured was an employee of the town and that the claimant should receive compensation.

A single member of the Industrial Accident Board, who heard the case under St. 1911, c. 751, Part III, §§ 5, 7, as amended by Sts. 1912, c. 571, §§ 9, 12; 1914, c. 708, § 9; 1917, c. 297, §§ 2, 4, stated in his report, " It was agreed that Daniel J. Chisholm received a personal injury in the course of and arising out of his employment on August 8, 1918, which resulted in his death; that Daniel J. Chisholm was an employee of Louis W. Bills; that Louis W. Bills was an independent contractor performing work for the engineers of the fire department of the town of Lexington; that the average weekly wages of Daniel J. Chisholm were $22.50 a week; and that the town of Lexington had accepted the provisions of St. 1913, c. 807." He further stated that the questions to be heard were (1) dependency and (2) " whether the claimant's decedent, as the employee of an independent contractor, performing work for the town, is embraced within the provisions of St. 1913, c. 807." He ruled as a matter of law that the liability imposed upon subscribers to pay compensation to the employees of an independent contractor was imposed by St. 1911, c. 751, Part III, § 17, that the liability imposed therein had no application to St. 1913, c. 807, and that the claimant was not entitled to compensation.

Upon motion by the claimant, the case again was referred to the single member of the board for the hearing of further evidence. In his second report he stated that, upon the evidence contained in the report of the former hearing and that introduced at the later hearing and facts which he reported, which are described in the opinion, he thought it was " clear that in respect to this work, Chisholm was an employee of the town; that Bills, Chisholm and Powers were employees; that Bills, besides working himself, furnished to the town such men as were needed; and that in respect to this particular work Bills was not acting as an inde-

pendent contractor. . . . The question is always one of fact, the controlling circumstances being the right to exercise control over the work in respect to all its details.   The exercise of such control is, of course, evidence of the right to exercise it, but it is manifest that in skilled employment the employer must on many occasions rely on the skill and judgment of the employee.   This act is remedial in its nature and must be given a liberal construction to accomplish the purpose intended.   It need not be construed here, however, otherwise than in accord with the well-settled principles of law governing these cases.   A town cannot, any more than an individual, shield itself behind the doctrines of independent contractor by hiring a person to do work and giving that person general authority to hire others.   On all the facts I find that Daniel J. Chisholm was an employee of the town of Lexington at the time of his injury and death, the claimant, Mary Chisholm, is entitled to the payment from the town of Lexington of $10 a week for a period of four hundred weeks from August 8, 1918."

The full board affirmed and adopted the findings and rulings of the single member of the board.

The proceedings in connection with the presentation of the certified copies of the papers in the case to the Superior Court and the recommittal to the Industrial Accident Board are described in the opinion.   Upon the return of the record after such recommittal, the case was heard in the Superior Court by *Wait*, J., by whose order a decree was entered in accordance with the decision of the Industrial Accident Board.   The town appealed.

*R. L. Ryder*, for the town of Lexington.

*T. F. Collins*, for the claimant.

RUGG, C. J.   This case was heard first by a single member of the Industrial Accident Board, and then by the full board on review.   On November 14, 1919, the decision of the board in favor of the dependent was filed and notice was sent by mail addressed to " Nathan B. Bidwell, Esq., Town Hall, Lexington, Mass." (who apparently was assumed by the board to represent the town of Lexington), and to the attorney representing the dependent. On December 1, 1919, " Copies of Report, Findings and Decision " were filed in the Superior Court by the dependent.

" This entry was not a presentation of the papers to the Superior Court " within ten days after the notice of the filing " of the order

or decision by the Industrial Accident Board (taking that notice at its face value), as required by St. 1911, c. 751, Part III, § 11, as amended by St. 1912, c. 571, § 14, and by St. 1917, c. 297, § 7 (see now G. L. c. 152, § 11), in all cases when the parties desire to appeal generally from the decision of the Industrial Accident Board to the Superior Court. There are, nevertheless, numerous instances where a party, successful in his contentions before the Industrial Accident Board, may need the aid of the Superior Court, and when that court has jurisdiction to render such aid. The entry of the copies by the dependent put her in a position to invoke the assistance of the court so far as needed.

The town presented to the Industrial Accident Board between December 1 and December 11, 1919, a motion that the decision rendered November 14, 1919, " be vacated." This motion was heard on December 11, 1919, and the decision was filed on December 20, 1919, in these words: " This motion is denied for lack of jurisdiction, the case now being before the Superior Court for further action as provided by Part III, § 11 of the act." No appeal was taken from that decision and its correctness is not before us.

On December 27, 1919, the town of Lexington filed a motion in the case pending in the Superior Court by reason of the presentation of papers by the dependent on December 1, 1919, praying that the " case be recommitted to the Industrial Accident Board so that said Industrial Accident Board may vacate a decision rendered on or about November 14, 1919, so that the Industrial Accident Board may give further and proper notice as provided in the statutes to said town of Lexington in reference to said decision; and that the said Industrial Accident Board may take such other and further action as under the circumstances may be meet and proper to give said town of Lexington the right to appeal to the Supreme Judicial Court of our Commonwealth on matters pertaining to this case; all this for the reason set forth in an affidavit hereto attached." The affidavit was signed by Mr. Bidwell and set out that Robert L. Ryder, Esquire, was counsel of record for the town in the Chisholm case before the Industrial Accident Board, and request by him that the deponent " appear for him and in his behalf before said Industrial Accident Board . . . said Robert L. Ryder, Esquire, being ill and out of the city and there-.

fore unable to attend said hearing." Further words of the affidavit are, " That I, the said Nathan B. Bidwell on said date did appear before said board at said hearing specifically explaining to the board the cause for said Ryder's absence and that I was merely appearing for him in the matter temporarily until he recovered sufficiently to attend to this case, said Ryder still being attorney of record in the case and that I did not intend to appear and did not appear as counsel of record in the matter." There are additional statements of a severe injury to the deponent which utterly incapacitated him from receiving or attending to the notice of the decision of the Industrial Accident Board sent on November 14 until long after the ten days had expired and that no notice was sent to Mr. Ryder, counsel of record in the Industrial Accident Board, who learned of the decision also after the expiration of the ten days from November 14, 1919, and of the time for claiming an appeal from the decision. The record states that " after due hearing upon the aforesaid motion " the judge of the Superior Court entered an order in these words: " On the within motion and affidavit I find and rule that the board did not notify the defendant [the town of Lexington] as required by § 10 as amended. The case is recommitted with direction to the board to notify the parties as required by said section." The dependent seasonably appealed from this order or decree.

Pursuant to the order of recommittal, the Industrial Accident Board on March 24, 1920, filed a new decision in the same words as its decision of November 14, 1919, and gave due notice thereof. For the purpose of appealing from that decision, the town of Lexington seasonably thereafter presented the requisite copies to the Superior Court. A decree was entered in the Superior Court in favor of the dependent in accordance with the decision of the Industrial Accident Board. The appeal of the town brings the case here.

The entry of the case by the dependent in the Superior Court on December 1, 1919, if in truth and in fact after the expiration of ten days from the giving of notice, ordinarily would not have conferred upon any party a right of appeal from the decision of the board. The only function of the court under such circumstances commonly is to enforce the finding of the Industrial Accident Board unless there is legal reason to the contrary. If in truth and

in fact no notice of the award of the board had been given to the other party to the controversy (unless possibly the right had been waived or for some other extraordinary cause the notice might be omitted), that would be a sufficient reason why the award should not be enforced. When a party desires to have reviewed according to the statute the errors of law made in an award of such a purely administrative tribunal as is the Industrial Accident Board, and is deprived of exercising that right by reason of failure by the board to give the notice of its decision as required by the statute, it would be manifestly just for the Superior Court to refuse its aid in enforcing such award unless on an inspection of the whole record it was free from harmful error. On such motion as was filed by the town on December 27, 1919, it was within the jurisdiction of the Superior Court to inquire into and decide the question whether notice had been given as required by the statute. It was necessary to determine that point in order to reach a conclusion whether the award ought to be enforced. This branch of the case is within the authority of *Sciola's Case*, 236 Mass. 407, and the decisions there reviewed.

It is not certain from the record whether the judge heard the motion to recommit only on the affidavit or whether he received other evidence or statements treated as evidence. If he pursued the latter course, it cannot be said that his finding was unwarranted because the evidence is not reported. If he heard the motion on the affidavit alone, we cannot say that his finding was without support in law. The affidavit taken at its face is to the effect that Mr. Ryder was " attorney of record for said town of Lexington " in the case as it was pending before the Industrial Accident Board, and that Mr. Bidwell made it plain to the board that he was only temporarily acting in his stead and " did not intend to appear and did not appear as counsel of record in the matter." Under the general practice of the courts notices are to be sent to the attorney appearing of record. We are not prepared to say that there was error of law in the finding that notice sent to Mr. Bidwell on November 14, 1919, under all the circumstances was not a compliance with the requirement of the act.

It follows that the case is rightly before us on the appeal of the town from the final decree.

The town of Lexington had accepted St. 1913, c. 807, under

§§ 6 and 7 whereof, as amended by St. 1916, c. 307, § 1, liability is imposed in substantial accordance with the workmen's compensation act respecting " all laborers, workmen and mechanics in the service of . . . a . . . town . . . under any employment or contract of hire, expressed or implied, oral or written. . . ."

It is stated in the record that " It was agreed that Daniel J. Chisholm received a personal injury in the course of and arising out of his employment," which resulted fatally; that he "was an employee of Louis W. Bills; . . . an independent contractor performing work for the engineers of the fire department of the town of Lexington." This agreement is construed to mean that Bills was in general an independent contractor and not that as to the particular work in question he was such. Otherwise the dependent would have agreed herself out of court at the start and the long hearing which took place without objection would have been an idle waste. *Clancy's Case*, 228 Mass. 316. Every intendment is against that inference.

The finding of the single member, affirmed and adopted by the board on review, was that, in respect to the work on which he was employed at the time of his injury, Chisholm was an employee of the town; that Bills, beside working himself, furnished to the town such men as were needed; and that, as to the particular work then in hand, Bills was not acting as an independent contractor. The only point to be decided in this connection is whether there is any evidence to support this finding. If so, it must stand. The question is not, what conclusion we should have reached on the evidence, but whether the decision of the board is rationally possible under the law. *Pigeon's Case*, 216 Mass. 51. *Pass's Case*, 232 Mass. 515. The fact that Chisholm was paid by Bills and not by the town is a circumstance to be considered on the question whether the relation of master and servant existed between them, or not, but is not decisive. The test to determine which of different persons is the employer ordinarily is, who has direction and control of the employee, and to whom does he owe obedience in respect of the particular matter in hand. *Generous* v. *Hosmer*, 216 Mass. 26, 28. In *Shepard* v. *Jacobs*, 204 Mass. 110, 112, the test was stated by Chief Justice Knowlton to be " whether the act is done in business of which the person is in control as a proprietor, so that he can at any time stop it or continue it, and determine the

way in which it shall be done, not merely in reference to the result to be reached, but in reference to the method of reaching the result." As was said by Mr. Justice Gray in *Singer Manuf. Co.* v. *Rahn*, 132 U. S., 518, at page 523, "The relation of master and servant exists whenever the employer retains the right to direct the manner in which the business shall be done, as well as the result to be accomplished, or, in other words, 'not only what shall be done, but how it shall be done.'" *Scribner's Case*, 231 Mass. 132. *Hasty* v. *Sears*, 157 Mass. 123. *Berry* v. *New York Central & Hudson River Railroad*, 202 Mass. 197, 203, 204. *Dutton* v. *Amesbury National Bank*, 181 Mass. 154. *McAllister's Case*, 229 Mass. 193. There was evidence tending to show that Chisholm received regular weekly compensation from his employer, Bills, at a rate per day somewhat less than that charged by Bills to the town. But Bills paid the car fare and dinner.

There was evidence tending to show that Bills was a fire alarm electrician employing several men and did work both as a jobber and general contractor. On the morning of the accident one Moakley, who was at the time the captain of the fire department and acting superintendent of the fire alarm of the town of Lexington, notifying Bills that the wires were down by reason of a heavy storm of the previous evening, asked him to take care of them. As a consequence Bills, with Chisholm and one other man and Moakley, started out together on the work. Moakley gave directions where they should go and pointed out certain things that he considered should be done. He also said that bells which were out of order should be removed from two houses where firemen lived. They went to Bedford Street, where Moakley said that "the open end was out of order and that they could jump it there and keep the town part working. . . . If they could close the line at that point there, they could keep the circuit down town working and cut out the part that was broken down . . . if they could put a jumper on the line at that point, they could close the circuit down town." Chisholm, who was present during the conversation, later went up the pole, and while on the pole to put on the jumper received his injury. At times Moakley would direct the employees of Bills what to do, and would look over the work to see what was being done. Bills testified that Moakley, who was an experienced electrician, would direct his men when he was not there and that

"Moakley had a right to exercise control over him on this particular job if he saw fit. Moakley did exercise control over him. . . . Moakley could tell him just how he wanted the work done. Moakley could order him to discontinue the work at any time. Moakley could do the same thing with Chisholm while witness was present. . . . Moakley has told his men the manner in which he wanted that work done and has told him the manner in which that work was to be done; as far as he knew the men have always done it." Moakley "could discharge Chisholm from the town's employ," and "could tell them the manner and form of doing the work." The accounts rendered by Bills to the town were itemized to the extent of showing the name, time and price per day charged for Chisholm and other men who worked for the town.

In view of this testimony, it cannot be said that the finding of the board was wholly without support. The existence of the general relation of master and servant between Bills and Chisholm did not exclude a like relation between the town and Chisholm to the extent of the particular work in which the latter was engaged at the time of his injury. Upon this point, in view of the facts found, the case is within the authority of *Johnson* v. *Boston,* 118 Mass. 114. It is distinguishable from the principle illustrated by *Pigeon's Case,* 216 Mass. 51, *Clancy's Case,* 228 Mass. 316, *Winslow's Case,* 232 Mass. 458, *Centrello's Case,* 232 Mass. 456, and similar decisions.

*Decree affirmed.*