Me.]

GAGNON'S CASE.

CAYER'S CASE.

MOORE'S CASE.

SYLVAIN'S CASE.

Aroostook.      Opinion May 7, 1929.

*Mrs. Felix B. Gagnon,*
*Adelard Cayer,*
*John T. Moore,*
*Joseph Sylvain,* pro se.
*James C. Madigan,* for respondents.

SITTING: WILSON, C. J., DUNN, STURGIS, BARNES, PATTANGALL, FARRINGTON, JJ.

PATTANGALL, J.   Cases arising under Workmen's Compensation Act. On appeal from decree of Industrial Accident Commission awarding compensation in each case. The sole issue before the Commission was whether or not at the time of receiving admittedly compensable injury, the injured men were employees of the Madawaska Construction Company.

Appellant claims that Gagnon, in favor of whose dependent widow award has been made, and Cayer were at that time employees of the Bailey Meter Company and that Moore and Sylvain were employees of the Combustion Engineering Corporation.

It is admitted that all of the injured men were in the general employ of the Madawaska Construction Company, but it is urged that at the time their injuries were sustained they were in the temporary employ of the Engineering Corporation and the Meter Company under an arrangement entered into between these companies and the Construction Company.

The Madawaska Construction Company, a subsidiary of the Fraser Paper Company, was engaged in the erection of a paper mill. In connection with the construction of the mill, the Fraser Company contracted with the Combustion Engineering Corporation for the purchase of a pulverized fuel system and furnace and with the Bailey Meter Company for certain meter equipment.

The case assumes that the Fraser Company and the Madawaska Construction Company were so related that these contracts have the same effect as though they had been entered into by the latter company.

The contract with the Combustion Engineering Corporation is in evidence. The record does not disclose the exact terms of the contract with the Bailey Meter Company; but it would appear from the oral evidence that the two contracts were alike in their essential features.

The Engineering Corporation made a written proposal to the Fraser Company to furnish, according to detailed specifications, F. O. B., Madawaska, the material for Lopulco Furnace Settings, applied to one Badenhausen Water Tube Boiler and to superintend the erection of the same.

The detailed specifications provided that the vendor should "furnish a competent man to superintend the erection of the settings described herein," also that vendor should "erect the Lopulco Water Screens, supplied on another contract." There was no mention in the proposal of labor or labor costs other than a provision that the purchaser should unload material from cars free of charge and that an adjustment should be made for overtime charges. This proposal was accepted.

The contract for the Lopulco Water Screens, referred to above, was evidenced by a proposal on the part of the Engineering Corporation, accepted by the Fraser Company. This proposal was to furnish Lopulco Pulverized Fuel System and Water Screens in accordance with specifications which contained the following provisions: Vendor to "furnish a competent man to superintend the erection and starting of its equipment. All labor, unless otherwise specified, for the installation and erection of the equipment shall be furnished by the purchaser."

The Engineering Corporation had, therefore, sold to the Fraser Company certain appliances, machinery and material which could only be properly assembled under expert supervision and had engaged to furnish such supervision. It did not undertake to install the appliances and machinery, but simply to furnish an engineer possessing sufficient technical skill to superintend the installation.

The testimony indicates a like situation with regard to the

Bailey Meter Company. It sold to the Fraser Company, for the mill which was being constructed by the Madawaska Construction Company, certain equipment to be installed under the direction of its representative.

The vendor companies delivered the equipment. Their engineers undertook to supervise its installation. The necessary labor was provided by the vendee, certain of its regular employees, in charge of foremen also in its regular employ, being assigned to the work.

Orders were given by the engineers to the foremen and by the foremen to the laborers. The selection of the individual workmen, the authority to employ and to discharge them, remained in the purchaser. There was no direct contract of employment between them and the vendor companies. The workmen continued on the regular payroll of the Construction Company.

An accident occurred. One workman was killed. Three were injured. Necessary steps were taken to bring the cases before the Industrial Accident Commission. It was agreed that compensation should be awarded. The only question was whether the awards should run against the Construction Company or the Engineering Corporation and the Meter Company. The former was admittedly the general employer. It was contended that the two latter companies were special employers of the injured men at the time of the accident, and that they and not the general employer were liable.

The Commission found against the Construction Company. The duty of this court is limited to ascertaining whether or not the Commission had before it legal evidence in support of its finding.

The fact that an employee is the general servant of one employer does not, as a matter of law, prevent him from becoming the particular servant of another. As a general proposition, when one lends his servant to another for a particular employment, the servant, for anything done in that particular employment, must be dealt with as the servant of the one to whom he is loaned, although he remains the general servant of his regular employer. *Wyman* v. *Berry*, 106 Me., 43 ; *Wilbur* v. *Construction Company*, 109 Me., 521 ; *Pease* v. *Gardiner*, 113 Me., 264.

But the mere fact that the work in which the servant is engaged is superintended by the agent of someone other than the master does not relieve the master of responsibility. "The test is whether

in the particular service which he is engaged to perform, he continues liable to the direction and control of his master or becomes subject to that of the party to whom he is lent or hired." *Coughlin* v. *Cambridge*, 166 Mass., 268. "If the men are under the exclusive control of the special employer in the performance of work which is a part of his business, they are, for the time being, his employees." *Comerford's Case*, 224 Mass., 571. The fact that the servant thus loaned remains on the payroll of his general employer is not decisive on the question of employment, although it is a circumstance to be considered. *Chisholm's Case*, 238 Mass., 412.

In *Arnett* v. *Hayes Wheel Co.*, 166 N. W., 957 (Mich.), the court set aside an award against a general employer under circumstances not wholly unlike those which appear here, but certain important factors were there present which are not found in the instant case. "After the laborers were turned over to the Grand Rapids Company, nothing was left to be done by the Jackson Company (the general employer) but to pay them. After they were placed subject to the orders of the Grand Rapids Company, they worked with the servants of that company, used the tools of that company upon material owned by it, obeyed its orders, worked the particular hours designated by it and obtained its consent if they desired to absent themselves for a time."

Appellant relies upon *Chisholm's Case*, supra, in which the court sustained a finding that the town of Lexington and not one Bills was the employer of Chisholm, although Chisholm was on Bills' payroll and generally was his employee. But in that case it appeared affirmatively in evidence that the officer in charge of the work for the town not only had a right to exercise control over the work in which Chisholm was engaged, and did so exercise control, but had authority to discharge Chisholm whenever he desired to do so. Under these circumstances the court concluded that "the finding of the board was not wholly without support."

"Where an employee performs services for a third party by direction of his employer, if the relation of employer and employee continues to exist between them during the performance of such services, the employer is liable under the Compensation Act for injuries sustained by the employee while performing the task so assigned to him, although he may be under the control of the third party as to

the details of the work." *O'Rourke* v. *Percy Vittum Co. et al*, 166 Minn., 251.

From the evidence submitted in the instant case, the Commission were justified in finding that the workmen were on the payroll of the general employer; that it retained authority to order the men when to go to work, to regulate the hours of their labor, and to discharge them at its pleasure; that while the representatives of the Engineering Corporation and the Meter Company had general supervision of the installation of the equipment which the general employer had purchased from their respective companies and directed the performance of the necessary work, they did not have such exclusive control of the laborers as to create the relation of master and servant.

These conclusions reached by the Commission can not be said to lack support in competent and credible evidence, and on the basis of these facts the result reached by them finds warrant in law.

*Appeal dismissed.*
*Decree below affirmed.*