Nilsson, *v.* Nepi Brothers (et al., Appellant).
Nilsson, Appellant, *v.* Dalton Brothers et al.

Argued October 27, 1939.

Before KELLER, P. J., CUNNING-HAM, BALDRIGE, STADTFELD, PARKER, RHODES and HIRT, JJ.

*Louis Wagner,* with him *Thomas J. Clary* and *Richard A. Smith,* for appellant, No. 335.

*Alexander F. Barbieri,* for appellant, No. 336, appellee, No. 335.

*Desmond J. McTighe,* of *Fox & McTighe,* with him *Kendall H. Shoyer,* for appellee, No. 335.

*Herbert A. Barton,* with him *Swartz, Campbell & Henry,* for appellee, No. 336.

OPINION BY PARKER, J., December 15, 1939:

Edward Nilsson died on July 31, 1936, as the result of an accident which occurred three days before in the course of his employment. As there was a dispute as to which of two employers of the deceased was liable for the payment of the workmen's compensation claimed by the widow on her own behalf and on behalf of their children, she, as a precaution, filed claims against Nepi Brothers and Dalton Brothers. The claims were then consolidated for the purpose of trial. It developed at the first hearing that the Maryland Casualty Company, alleged insurer of Nepi Brothers, denied that a policy which it had issued protected that employer under the circumstances.

The referee decided that Nepi Brothers were the employers of deceased at the time of the accident and held that partnership liable, at the same time exonerating Dalton Brothers and their insurance carrier. The referee also found that the policy issued by Maryland

Casualty Company did not cover the loss in question, thus leaving Nepi Brothers without insurance. On appeal the Workmen's Compensation Board affirmed the decision of the referee as to the liability of Nepi Brothers but reversed the referee as to the responsibility of their insurance carrier and made an award against Nepi Brothers as employer and Maryland Casualty Company as their insurer. That award was affirmed by a court of common pleas and judgments were entered against Nepi Brothers and Maryland Casualty Company and in favor of Dalton Brothers and their insurance carrier. The Maryland Casualty Company has appealed from the judgment entered against it and the claimant has appealed from the judgment in favor of Dalton Brothers for the purpose of protecting her claim in the event that it might be held that Nepi Brothers were not the employers of the deceased. The two appeals involve much the same facts and will be considered in one opinion.

Two, and only two, questions are presented to this court. Does the evidence support the finding of the board that Nepi Brothers were the exclusive employers of deceased and the finding that the insurance policy in question covered the liability imposed upon Nepi Brothers? We are all of the opinion that the board and the court below correctly decided both issues.

(1) It seems clear to us that the deceased was in the exclusive employ of Nepi Brothers at the time of the accident. Dalton Brothers were general contractors for the construction of a state highway at Chadds Ford, Pennsylvania. Nepi Brothers contracted with Dalton Brothers to furnish trucks and truck drivers for use on the road for which Nepi Brothers were to be paid at the rate of $2 per load transported but Dalton Brothers were to pay the truck drivers at the rate of forty cents per hour, deducting such payments for labor from the contract price. The truck drivers lived in the neighborhood of Ardmore, about fifteen miles from Chadds

Ford, and the general contractor required the trucks and drivers to be available for work at Chadds Ford at 6 A. M., where they were used and employed ten or twelve hours each day, six or seven days a week. There were no convenient public transportation facilities between Ardmore and Chadds Ford, so Nepi Brothers on their own responsibility agreed to transport the drivers of their trucks to and from work in one of the trucks, and Nepi Brothers were to pay the men forty cents per hour or sixty cents per day, the round trip consuming one and one-half hours. On July 28, 1936, Nilsson, one of the truck drivers, while being transported from Chadds Ford to Ardmore, and after leaving the premises of Dalton Brothers, was thrown from the truck and injured so severely that he died.

After the day's work began the deceased and other drivers of the trucks furnished by Nepi Brothers were subject to the orders and direction of Dalton Brothers who determined the manner in which the trucks should be operated and the work performed. While Dalton Brothers concede that if the accident had occurred after the day's work on the actual road construction work began they would be liable for the payment of compensation, such fact is not controlling. "Where one person lends his servant to another for a particular employment, the servant, for anything done in that particular employment, must be dealt with as a servant of the man to whom he is lent, although he remains the general servant of the person who lent him. The test is whether, in the particular service which he is engaged to perform, he continued subject to the direction and control of his master, or becomes subject to that of the party to whom he is lent or hired": *Tarr v. Hecla Coal & Coke Co.*, 265 Pa. 519, 522, 109 A. 224; *Sgattone v. Mulholland & Gotwals, Inc.*, 290 Pa. 341, 346, 138 A. 855; *Persing v. Citizens Traction Co.*, 294 Pa. 230, 144 A. 97.

Nepi Brothers undertook by their contract to deliver the drivers of their trucks on the location at an early

hour each day and have the trucks ready for service. That firm was interested in securing work for their trucks and since the work was being performed on a piece work basis they were likewise concerned to know that the men were on the job when work started. Recognizing such interest they undertook for their own advantage to transport the men in their own truck to and from work and paid the men for the time consumed in making such trips, all without the advice of Dalton Brothers who did not know that the drivers were being so paid by Nepi Brothers. The drivers were paid directly by Dalton Brothers for the time spent in actual road work, but were paid directly by Nepi Brothers for time consumed in going to and coming from work. The question is: Who had the control of the one injured at the time of the accident: *Byrne v. Hitner's Sons Co.*, 290 Pa. 225, 138 A. 826. "Though the payment of wages may aid in determining the real employer (*Atherholt v. Stoddart Co.*, supra [286 Pa. 278, 133 A. 504]; *Sgattone v. Mulholland & Gotwals*, 290 Pa. 341), it alone is not a determining factor": *Persing v. Citizens Traction Company*, supra, p. 235.

Ordinarily the employer is not liable for the payment of compensation for an accident occurring while the employee is going to or returning from his work (*Haley v. Phila.*, 107 Pa. Superior Ct. 405, 163 A. 917; *Cronin v. American Oil Co.*, 298 Pa. 336, 148 A. 476), but where for the advantage of the employer the latter makes an arrangement by which he furnishes transportation to the employee coverage exists during the period of such transportation (*Knorr v. Central R. R. of N. J.*, 268 Pa. 172, 110 A. 797; *Dunn v. Trego*, 279 Pa. 518, 124 A. 174; *Garratt v. McCrady Construction Co.*, 114 Pa. Superior Ct. 579, 174 A. 808; *Bock v. Reading*, 120 Pa. Superior Ct. 468, 182 A. 732). Here Nepi Brothers not only furnished the transportation but paid the employee for the time consumed in going to and coming from work and the arrangement was made for their special advan-

tage. The facts furnish no basis for charging Dalton Brothers with liability after the driver left the premises and was on his way home. At that time he was subject to the orders of Nepi Brothers and not of Dalton Brothers.

(2) The Maryland Casualty Company by a contract of insurance became liable for the payment of the award made against Nepi Brothers and judgment was correctly entered against that insurer. The company was properly made a party of record and it became the duty of the compensation authorities to determine the coverage of the policy: *Levan v. Pottstown, P. Ry. Co.*, 279 Pa. 381, 385, 124 A. 89; *Span v. Accident & Guar. Corp.*, 92 Pa. Superior Ct. 418, 420. Nepi Brothers was a partnership composed of two brothers, Etalo and Clorindo. That firm engaged not only in the nursery business, including landscaping, gardening and pruning, but they also used their trucks in hauling operations for others and held certificates of public convenience from the Public Service Commission. One brother devoted his time largely to the nursery and gardening and the other to the trucking operations. About thirty-five per cent of the business transacted was gardening etc. and sixty-five per cent was hauling. The headquarters for the landscaping and gardening business were at Narberth, but the trucks, when not in use, were kept in a garage at Ardmore. The two phases of the business conducted were not entirely dissociated for some of the trucks were at times used in landscaping and gardening and when the employee, Nilsson, was not engaged in driving he was employed about the nursery or in gardening and landscaping.

Maryland Casualty Company through an insurance broker issued a policy to Nepi Brothers for the year beginning March 24, 1936. The policy contained at its head the words "Standard Workmen's Compensation and Employers Liability Policy." By the contract the insurer undertook to pay promptly "for any ......

injury imposed upon or accepted by this Employer" under the Workmen's Compensation Law as "cited and described in an endorsement attached to this Policy." It also contained the following clause: "This Agreement shall apply to such injuries so sustained by reason of the business operations described in said Declarations which, for the purpose of this insurance, shall include all operations necessary, incident or appurtenant thereto, or connected therewith, whether such operations are conducted at the work places defined and described in said Declarations or elsewhere in connection with, or in relation to, such work places." The policy classified the operations of the insured as follows: "#0015-Gardeners-all employees except office."

The Maryland Casualty Company had carried all of Nepi Brothers compensation insurance for several years. There was attached to the policy in question a rider described as "Voluntary Compensation Endorsement-Pennsylvania" which was in part as follows: "If any employee of this Employer covered by this Policy is injured while in an employment herein described which is not included in the Workmen's Compensation Law hereinafter described but is injured under circumstances which would have rendered this Employer liable for compensation if the employment in which the injury was sustained was included in such Workmen's Compensation Law, then the Company agrees to voluntarily pay on behalf of this Employer the same compensation to such injured employee as would have been paid if the injury had been sustained in an employment which is included in such Workmen's Compensation Law."

The insurance company contends that its contract covered only those employees of Nepi Brothers who were engaged in agriculture; that it was intended to cover only such liability as the employers voluntarily assumed and for which they were not liable under the Workmen's Compensation Law. It concedes that it would be liable in a common law action whether the

employee was engaged in gardening, landscaping or conducting a nursery.

We find no support for the appellant's construction of this policy either in the contract itself or in the circumstances. It is provided in part by the Insurance Company Law of 1921 (Act, May 17, 1921, P. L. 682, §651, 40 PS §811) that "Every policy of insurance against liability under 'The Workmen's Compensation Act of nineteen hundred and fifteen,' and acts amendatory thereof, shall contain the agreement of the insurer to pay all compensation and provide all medical, surgical, and hospital attendance for which the insured employer may become liable under the act during the term of such insurance."

On its face the policy not only purports to be a workmen's liability insurance policy, but it specifically contains a covenant to pay any sums found to be due from the employer "to any person entitled thereto under the Workmen's Compensation Law." The mere fact that a rider was added assuming an additional voluntary liability outside the compensation law and on account of those engaged in agriculture does not subtract an iota from the general liability assumed. It is a common practice in the insurance business to extend liability beyond that fixed in the printed form by a rider attached, as for example in the case of fire insurance where a rider is frequently attached assuming liability for damages from lightning and from hurricane. Double liability for death from accident is added to ordinary life policies. In plain English the insurer covered all employees except office employees of the insured. It was the workmen's compensation liability of Nepi Brothers to their employees which the insurer undertook in the first instance to discharge and then added the condition that they would assume a corresponding liability even though the employee might be without the terms of the Workmen's Compensation Law but engaged in agriculture. See Act of June 2, 1915, P. L. 736, Sec. 506.

The insurer urges that the declaration described the business of Nepi Brothers as gardeners, that gardeners are alone engaged in agriculture and that, therefore, they assumed only a liability outside the compensation law. Not only are the terms of the policy to the contrary, but the company itself answered that contention when it placed on the stand David Scott, Jr., its supervisor of compensation underwriting. He described the meaning of the different classifications and then said: "The classifications are used for the premium purposes and not for coverage purposes ...... When it is definitely determined as to which type of policy is being used, that which is subject to the Law or that issued under a voluntary compensation, I agree that the classification is more or less immaterial."

The circumstances not only do not support the position of the insurer, but are unfavorable to its interpretation. It had been carrying the workmen's compensation insurance for Nepi Brothers for several years and about two months before the accident was engaged in making a payroll audit of defendants' books. From this audit they knew or should have known that Nepi Brothers were paying a number of truck drivers and operating trucks in other business than that of landscaping, gardening or conducting a nursery. For at least three years they had collected premiums based on wages paid, about two-thirds of which were on account of trucking operations for others. Nepi Brothers are claiming the coverage for which they actually paid. We are all of the opinion that the policy by its express terms covered the operations in which Nepi Brothers were engaged at the time the deceased met with a fatal accident and all of the circumstances, as well as the company's own interpretation, support our conclusion.

The judgments entered by the court below are affirmed.