MARY SHAMBURG, APPELLEE, V. VERNON SHAMBURG, DOING
BUSINESS AS FAIRBURY CEMENT BLOCK COMPANY,
APPELLANT.

45 N. W. 2d 446

Filed December 27, 1950.   No. 32912.

*Jack, Vette & Elliott,* for appellant.

*Hubka & Hubka,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

MESSMORE, J.

This is a workmen's compensation case brought by Mary Shamburg against Vernon Shamburg, doing business as the Fairbury Cement Block Company, to recover death benefits under the workmen's compensation law by reason of an accident sustained by her husband Orin Shamburg which resulted in his death while in the employ of the defendant.

On December 15, 1949, plaintiff filed her petition in the Nebraska Workmen's Compensation Court, wherein she alleged her husband was killed while in the employ of the defendant, and prayed for relief in accordance with the workmen's compensation law. The defendant and his insurance carrier filed answer to the petition, and alleged that the plaintiff's husband, at the time of his death, was not an employee of the defendant but was actually in the employ of one R. M. Weblemoe; prayed for dismissal of the plaintiff's petition and that R. M. Weblemoe, doing business as the Weblemoe Sand and Gravel Company or Weblemoe & Company, be made a party to the action; and that the cause be continued until process could be completed on R. M. Weblemoe as designated, and the issues joined. The motion to make R. M. Weblemoe, as before mentioned, a party was overruled.

On February 16, 1950, after hearing had before a judge of the workmen's compensation court, an award was entered in favor of the plaintiff and against the defendant in the sum of $22 a week for a period of 325 weeks from and after September 30, 1949, the date of the accident resulting in the death of the plaintiff's hus-

band, and in addition, the sum of $250 funeral benefits.

On February 28, 1950, the defendant filed an application for rehearing before the entire workmen's compensation court, setting up the errors alleged to have been committed by the judge granting the award. On May 6, 1950, after hearing had before the entire compensation court on rehearing, an award was granted the plaintiff sustaining the award previously granted. Notice of appeal from rehearing was filed by the defendant May 12, 1950, in the workmen's compensation court.

On May 19, 1950, the defendant filed a petition on appeal in the district court for Jefferson County setting forth the proceedings had in the workmen's compensation court; alleging in addition that the deceased was at the time of his accidental death an employee of R. M. Weblemoe; and alleging error in the granting of the award by the workmen's compensation court in its findings of fact and in failing to join R. M. Weblemoe in the action. The plaintiff filed an answer to the petition on appeal reiterating the allegations of her petition filed in the workmen's compensation court, and prayed for death benefits as provided for by law. The cause was tried before the district court for Jefferson County on the evidence adduced in the hearing before the entire workmen's compensation court. The trial court entered an award affirming the award granted by the workmen's compensation court.

Upon the overruling of the defendant's motion for new trial, defendant perfected appeal to this court.

We will refer to the parties as originally designated in the workmen's compensation court.

The principal assignments of error are: (1) The findings of fact by the trial court are not sustained by the evidence; and (2) the award entered by the trial court is contrary to law.

That the plaintiff is entitled to the benefits under the workmen's compensation law is not questioned. The question as to whether the defendant is liable for

the payments of the same constitutes the sole issue in the case.

Both parties treat the assignments of error as sufficient to require a review here under the provisions of section 48-185, R. S. 1943, that a judgment of the district court may be modified or set aside only upon the ground that "the findings of fact are not conclusively supported by the evidence as disclosed by the record, and if so found, the cause shall be considered de novo upon the record."

Defendant asked for a trial de novo. Plaintiff submits that the award is conclusively supported by the record. This procedure calls for us to review the evidence. If upon that review we find the award is conclusively supported by the evidence, that ends the matter. If, however, as a result of a review of the evidence on a trial de novo we find that the award should be sustained, it is not necessary to determine the question as to whether the award is "conclusively supported by the evidence." If we find as a result of a trial de novo that the award should be modified or set aside, then obviously it is not conclusively supported by the evidence. We so review this evidence. See Werner v. Nebraska Power Co., 149 Neb. 408, 31 N. W. 2d 315.

For convenience we will refer to Orin Shamburg as Orin, to Vernon Shamburg as Vernon, and to R. M. Weblemoe as Weblemoe.

The facts are in little dispute, if any. Mary Shamburg, her husband Orin, and a minor son lived together in Fairbury and were so living on September 30, 1949, at the time Orin met with an accident which proved fatal. The wife and son were dependents of the husband and father. Vernon, an elder son, had full time employment with an electric company. In October 1947, he purchased a building and equipment located on the ground belonging to Weblemoe who is engaged in the sand and gravel business. The purchase was made from Weblemoe, and Vernon became the sole owner of the

property, his purpose being to manufacture and sell cement blocks. Due to the fact that he was steadily employed, he hired Orin to oversee, supervise, and manage the cement block business. He paid Orin by the hour, once a month, carried him as an employee on the records, noted the payment of salary on the audit account, turned in the wages of Orin for compensation insurance, and paid the social security assessments on Orin's wages. Orin's occupation was given as yard worker in the workmen's compensation insurance policy carried by Vernon. A stock pile of cement blocks was kept on hand for sales, which in such industry are generally made during the building season in the spring and fall. During the winter when the days are warm enough the cement blocks are manufactured. These matters were attended to by Orin. Vernon did the book work involved in the business.

In the fore part of January 1949, Vernon and Weblemoe entered into an arrangement whereby Orin would work for Weblemoe who at the time had something for Orin to do. Orin was not needed full time at the cement block plant, so Vernon loaned Orin to Weblemoe. Orin had no knowledge of the arrangement and made no objections to working for Weblemoe. Some discussion was had between Vernon and Weblemoe with reference to the compensation insurance. Vernon had always carried such insurance on Orin and it was agreed that that would continue, and that Orin would remain in the employ of Vernon.

Orin received wages of one dollar an hour. Vernon purchased sand from Weblemoe, and Weblemoe purchased products from Vernon. They had accounts between themselves, and Vernon was indebted to Weblemoe. Orin kept a record of the number of hours he worked for Weblemoe, and turned his report of the same over to Vernon once a month. The wages paid Orin by Vernon were in no manner dependent upon any money that might be received from Weblemoe.

Weblemoe credited Vernon's account with the labor of Orin, which amounted to a dollar and ten cents an hour and included truck service and assessments on social security of Orin.

Orin always opened the business of the cement block company while he worked for Weblemoe, and, if needed, he would return to the business and attend to any matters in connection therewith that required attention. That was part of the arrangement between Weblemoe and Vernon. Weblemoe had no ownership or interest in the cement block business.

Weblemoe testified that he made the arrangement with Vernon to have Orin work for him; that he had no contract for hire with Orin; and while Orin was working for him he directed the work that Orin was to do. The reason for the arrangement was that he needed help, and it was not necessary to have a man at the cement block plant at all times, so he arranged to have Orin work for him while he wasn't working at the cement block plant and wasn't needed at the plant. He kept no record of Orin's time, paid him nothing, did not carry him as an employee, and upon being billed by Vernon for the labor he in turn credited Vernon's account with him for such amounts.

The exhibits in the record, consisting of checks, show the payments made to Orin by Vernon for the amount of wages he was entitled to, and other exhibits show the number of hours Orin worked for Weblemoe.

Weblemoe was present when on September 30, 1949, on his property, Orin met his death. Just prior to his death Orin was giving instructions in moving a dragline as to where it should be set because the operator was not in an advantageous position to properly set the dragline. The bucket from the dragline fell, struck Orin, and killed him.

The foregoing constitutes the relevant and material evidence upon which the trial court affirmed the award granted by the workmen's compensation court.

Under the Workmen's Compensation Act of this state the relation of employer and employee is dependent upon the contract for hire. The pertinent sections of the statutes are sections 48-114 and 48-115, R. S. 1943. Under section 48-114, R. S. 1943, every person, firm, or corporation engaged in any business, who has any person in service under any contract of hire, express or implied, oral or written, is defined as an employer. Section 48-115, R. S. 1943, provides that the term "employee" means every person in the service of an employer. under any contract of hire, express or implied, oral or written.

The relation of employer and employee is the same relation that is familiar throughout the law under the name of master and servant, except that to be an employee, as distinguished from a servant generally, one must serve under a contract of hire. See McDermott's Case, 283 Mass. 74, 186 N. E. 231.

In approaching a determination of this appeal we are cognizant of the complexities that arise due to the interchange and loaning of employees in modern business, and the variance in the decisions in this field. We shall not attempt to reconcile the various decisions on this subject matter. Generally most courts agree that the main test is the right of control, and that right, in the actual exercise of that control, governs. See, Bernardy v. Beals, 75 N. D. 377, 28 N. W. 2d 374; McDermott's Case, *supra;* McDowell v. Stilley Plywood Co., 210 S. C. 173, 41 S. E. 2d 872; Yergey v. Montgomery Ward & Co., 239 Iowa 258, 30 N. W. 2d 153; Burnett v. Industrial Commission (Ohio App.), 63 N. E. 2d 240; Peterson v. Highland Crate Cooperative, 156 Fla. 539, 23 So. 2d 716. Other factors are looked to only to aid in determining whether such relationship existed in a given case.

In ascertaining when a person is an employee of another although his contract of employment is not directly made with such person, each case must be decided on its peculiar facts and ordinarily no one feature of re-

lationship is determinative. See Cimorelli v. New York Cent. R. R. Co., 148 F. 2d 575.

While there is considerable conflict in the decisions, it appears that according to the great weight of authority in the United States, the general test in determining whether an employee is a servant of his original master, or of the party to whom he has been furnished, is whether in the particular service which he is engaged to perform he continues to be liable to the direction and control of his master, or becomes subject to that of the party to whom he is lent or hired. See, Independence Indemnity Co. v. Industrial Accident Comm., 203 Cal. 51, 262 P. 757; Parsons v. Daly & Sons, 114 Conn. 143, 158 A. 216; Allen-Garcia Co. v. Industrial Comm., 334 Ill. 390, 166 N. E. 78; Gagnon's Case, 128 Me. 155, 146 A. 82; Chisholm's Case, 238 Mass. 412, 131 N. E. 161; Oklahoma General Power Co. v. State Industrial Comm., 108 Okl. 251, 235 P. 1095; Persing v. Citizens Traction Co., 294 Pa. 230, 144 A. 97; Lewis v. Byers Motor Car Co., 102 Pa. Super. 434, 156 A. 899; Schneider's Workmen's Comp. Law, (2d ed.), § 24, p. 213; 71 C. J., Workmen's Compensation Acts, § 139, p. 403; Berrier v. Associated Indemnity Co., 142 Fla. 351, 196 So. 188.

As stated in Rhinelander Paper Co v. Industrial Comm., 206 Wis. 215, 239 N. W. 412: "It is quite generally agreed that in order to transfer liability from the general employer to the one to whom the employee is loaned, there must be some consensual relationship between the loaned employee and the employer whose service he enters, sufficient to create a new employer-employee relationship. Where an employee enters the service of another at the command and pursuant to the direction of the master, no new relationship is created. While the employee may be subject to the direction of the temporary master, he is there in obedience to the command of his employer, and in doing what the new master directs him to do he is performing his duty to the employer who gave the order. * * * Consent cannot

be inferred merely from the fact that the employee obeyed the commands of his master in entering the services of another."

In Dahl v. Wunderlich, 194 Minn. 35, 259 N. W. 399, the court said: "Before such new relationship can be made effective the servant must understand that he is submitting himself to the control of the new master." See, also, Snetcher & Pittman v. Talley, 168 Okl. 280, 32 P. 2d 883.

It is the weight of authority that while payment of wages is a circumstance which may aid in determining the employer, that payment of wages or salary, of itself, is insufficient to establish that the receiver thereof is the servant of the one paying the wages or salary. See Berrier v. Associated Indemnity Co., *supra.* See, also, Nilsson v. Nepi Bros., 138 Pa. Super. 107, 9 A. 2d 912.

The defendant contends that during the greater part of the year of 1949, up to the time of his death, the deceased performed little service for Vernon, but that a considerable portion of his work was with Weblemoe.

Duration of time of employment is not a controlling factor to the establishment of the relationship of master and servant, or in other words, employer and employee. See, Northern Trust Co. v. Industrial Comm., 231 Wis. 133, 285 N. W. 339; Johnson v. Wisconsin Lumber & Supply Co., 203 Wis. 304, 234 N. W. 506, 72 A. L. R. 1279.

With the foregoing authorities in mind, and applying the facts in the instant case thereto, we believe the cited authorities are controlling. The evidence in the instant case shows that Orin's contract for hire was made with Vernon. He made no such contract with Weblemoe, and at all times he was subject to the general orders of Vernon. There is no evidence in the record that Vernon ever relinquished or resigned full control over Orin to Weblemoe. When the business of the defendant required Orin's attention, he turned from the work that he was doing for Weblemoe and

attended to the business of the defendant, and did not return to Weblemoe's work until he had completed such business. Weblemoe could not exercise the right to discharge him, nor to order him to do work directed by him to the exclusion of the defendant's business. The fact that Weblemoe and his agents directed the deceased in the performance of the work he was doing for Weblemoe does not change the situation. In the case of a loaned employee such direction and control is necessary and present.

It is apparent that Vernon benefited from the labor performed by Orin for Weblemoe. It made it possible, while he was employed elsewhere full time, to keep the business of the cement block company open at considerable less expense. Likewise, Weblemoe benefited from Orin's labor, because at the time he needed a man of that type to do work for him.

We conclude the trial court's findings in such respect were correct.

The plaintiff requests that under the authority of section 48-125, R. S. 1943, the court, in addition to allowing the maximum compensation also grant a penalty in favor of the plaintiff, with respect to all delinquent payments, for the reason that no reasonable controversy existed and there was no reason for the continued failure to pay the installments as they became due. We are not in accord with the plaintiff's contention in such respect. A reasonable controversy did exist, and the defendant had a right to have such controversy determined. However, as provided for in section 48-125, R. S. 1943, in the event the employer appeals to the district court from the award of the compensation court, or any judge thereof, and fails to obtain any reduction in the amount of such award, the district court may allow the employee a reasonable attorney's fee to be taxed as costs against the employer, and the Supreme Court shall in like manner allow the employee a reasonable sum as attorney's fees for the proceedings in this court. The

plaintiff requests an attorney's fee in this court. The statute authorizes it. See Faulhaber v. Roberts Dairy Co., 147 Neb. 631, 24 N. W. 2d 571. The plaintiff is allowed an attorney's fee of $250 for services in this court.

Upon a review of the evidence we find and conclude the award is conclusively supported by the evidence. The judgment of the district court is affirmed.

AFFIRMED.