MID-AMERICA PIPELINE COMPANY ET AL., APPELLANTS, V. LELA BELLE WARREN, ADMINISTRATRIX OF THE ESTATE OF CHARLES WARREN JR., DECEASED, APPELLEE.
LELA BELLE WARREN, ADMINISTRATRIX OF THE ESTATE OF CHARLES WARREN, JR., DECEASED, APPELLEE, V. PANHANDLE CONSTRUCTION COMPANY ET AL., APPELLANTS.

193 N. W. 2d 749

Filed January 21, 1972. Nos. 38124, 38192.

Pilcher, Howard & Dustin and Harold W. Kauffman of Gross, Welch, Vinardi, Kauffman, Schatz & Day, for appellants.

John J. Higgins of Eisenstatt, Higgins, Kinnamon & Green, for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, SMITH, McCOWN, NEWTON, and CLINTON, JJ.

NEWTON, J.

Two actions consolidated for trial purposes are involved here. In the first, the administratrix of the estate of Charles Warren, Jr., deceased, seeks to recover workmen's compensation from the Panhandle Construction Company, hereinafter referred to as Panhandle. In the second, Mid-America Pipeline Company, hereinafter referred to as MAPCO contends it was a special employer of Warren and, as such, liable under the workmen's compensation laws. Both companies carried insurance with the same insurer and the cases presented may be determinative of the right of the administratrix to bring an action for negligence against MAPCO.

The compensation court, and the district court on appeal, found Panhandle to be liable as a general employer and further found that MAPCO was not a special employer of Warren and was not liable for workmen's compensation. We affirm both judgments of the district court.

Panhandle had been engaged as an independent contractor in the construction of portions of an anhydrous pipeline for MAPCO but had no part in the construction of MAPCO's propane pipeline. In some instances the parties had written contracts for work to be done on a fixed-price basis. In other instances, Panhandle worked

under oral contracts on a cost plus 25 cents per foot basis. At the time of Warren's accident, Panhandle was delayed in its written contract work because MAPCO had right-of-way problems and in the interim Panhandle was performing miscellaneous jobs on a cost plus or cost basis.

On December 5, 1968, a break occurred in MAPCO's propane line north of Yutan, Nebraska. MAPCO did not have the men and machinery available to repair the break. It requested help from Panhandle. Required were a back hoe, a back hoe operator and oiler, a winch truck with driver, a welding outfit and welder, and a truck with a lowboy trailer to haul the back hoe. MAPCO supplied its own supervisor to oversee the work. Warren was a truck driver and the undisputed evidence shows that in connection with the pipeline break repair matter, his only job was to load the back hoe, haul it to the scene of the break, and unload it, then later to return it. Warren was, and had been for many years, an employee of Panhandle. He received directions from his superior to load the back hoe and take it to the scene of the break which would be identified by a MAPCO representative who also suggested the use of back roads in getting there. Warren drove to the scene of the break, then got into an automobile, for an unknown purpose, and rode into the field with the MAPCO supervisor. An explosion occurred and both were killed.

Apparently it was not unusual for Panhandle to assist MAPCO in small jobs of this nature and in such cases it billed MAPCO for extra work solely on a cost basis. This was done for the assistance rendered in connection with the propane line break. The invoice forwarded to and paid by MAPCO covered machine use, wages, social security, unemployment insurance, compensation insurance, etc. It may reasonably be inferred from this record that Panhandle, which received a considerable volume of contract work from MAPCO, was anxious to oblige MAPCO by assisting it in minor ways such as in

the case of the propane break and consequently performed this work on a cost only basis.

Under these circumstances was Warren at the time of his death an employee of Panhandle, MAPCO, or both? Panhandle was his general employer. A Panhandle representative informed Warren he had a trip he wanted Warren to make, directed Warren to get the truck, load the back hoe, and to contact the MAPCO representative, who thereafter explained to Warren the site or location of the break. It is evident that in taking the back hoe to the vicinity of the pipeline break, Warren was following orders received from his superior in Panhandle. Once at the scene his only remaining duty was to unload the back hoe and its operator would take it in charge. His duties were not such as to place him in the slightest degree under the orders of the MAPCO supervisor. Why he got into the supervisor's automobile remains in the realm of speculation.

The following excerpts from Shamburg v. Shamburg, 153 Neb. 495, 45 N. W. 2d 446, appear pertinent here. " * * * the general test in determining whether an employee is a servant of his original master, or of the party to whom he has been furnished, is whether in the particular service which he is engaged to perform he continues to be liable to the direction and control of his master, or becomes subject to that of the party to whom he is lent or hired. * * *

"* * * 'It is quite generally agreed that in order to transfer liability from the general employer to the one to whom the employee is loaned, there must be some consensual relationship between the loaned employee and the employer whose service he enters, sufficient to create a new employer-employee relationship. Where an employee enters the service of another at the command and pursuant to the direction of the master, no new relationship is created. While the employee may be subject to the direction of the temporary master, he is there in obedience to the command of his employer, and in doing

what the new master directs him to do he is performing his duty to the employer who gave the order. * * * Consent cannot be inferred merely from the fact that the employee obeyed the commands of his master in entering the services of another.'

"* * * 'Before such new relationship can be made effective the servant must understand that he is submitting himself to the control of the new master.' "

The record indicates that at all times Warren was following the orders of his general employer and was not subjected, either by his employer or himself, to the control of MAPCO.

Pertinent also is the following rule: "On appeal of a workmen's compensation case to the Supreme Court, if there is reasonable competent evidence to support the findings of fact in the trial court, the judgment, order, or award will not be modified or set aside for insufficiency of the evidence." Gifford v. Ag Lime, Sand & Gravel Co., ante p. 57, 187 N. W. 2d 285. See, also, Bole v. S.M.S. Trucking Co., ante p. 341, 190 N. W. 2d 780.

The contention of Panhandle that it is not properly taxed with attorney's fees is based on its claim that it was not, at the time of the accident, the employer of Warren. In view of the foregoing, this contention is without merit.

The judgments of the district court are affirmed. Appellee is awarded an attorney's fee in the sum of $500 for services in this court.

AFFIRMED.