REQUESTED BY: Senator Emil E. Beyer, Jr. Nebraska State Legislature 2022 State Capitol Lincoln, Nebraska 68509
Dear Senator Beyer:
This is in response to your letter regarding whether a county board of commissioners has the statutory authority to negotiate and enter into a labor contract with an organization of county employees employed in the offices of elected county officials.
Labor negotiations between public employers and public employees are governed by Neb.Rev.Stat. §§ 48-801 et seq. (1982 Supp.). Neb.Rev.Stat. § 48-816(2) (1982 Supp.) provides:
 Public employers are hereby authorized to recognize employee organizations for the purpose of negotiating collectively in the determination of, and administration of grievances arising under, the terms and conditions of employment of their public employees as provided in this act, and to negotiate and enter into written agreements with such employee organizations in determining such terms and conditions of employment. (Emphasis added.)
Neb.Rev.Stat. § 48-816(4) states:
 When an employee organization has been certified as an exclusive collective bargaining agent or recognized pursuant to any other provisions of this act, the appropriate public employer shall be and is hereby authorized to negotiate collectively with such employee organization in the settlement of grievances arising under the terms and conditions of employment of the public employees as provided in this act, and to negotiate and enter into written agreements with such employee organizations in determining such terms and conditions of employment, including wages and hours. (Emphasis added.)
In order to determine which governmental entity is authorized to negotiate with a public employees' organization, it is necessary to determine whether the employer is, in fact, the county board or the elected county official. Neb.Rev.Stat. § 48-801(4) (1982 Supp.) provides: `Employer shall mean the State of Nebraska or any political or governmental subdivision of the State of Nebraska, except the Nebraska National Guard or state militia, any municipal corporation or any public power district or public power and irrigation district.' While making clear that the employer is a governmental entity or subdivision, this definition does not provide much guidance in determining exactly which entity is the employer. This is especially true in state and county governments where the responsibility for establishing an employee's terms and conditions of employment are by law distributed among several entities.
The definition of employer and when an employer-employee relationship exists has been examined by the courts in other situations. In Gardner v. Kothe, 172 Neb. 364,109 N.W.2d 405 (1961), the Nebraska Supreme Court stated: `The primary test in determining whether the relationship of employer-employee exists is whether the alleged employer has the right of control and supervision over the work of the alleged employee and the right to direct the manner in which the work is to be done as well as the result which is to be accomplished.' In Shamburg v. Shamburg, 153 Neb. 495,45 N.W.2d 446 (1950), it is stated: `Generally most courts agree that the main test is the right of control, and that right, in the actual exercise of that control, governs. . . . Other factors are looked to only to aid in determining whether such relationship existed in a given case.'
The Supreme Court of Michigan was faced with a similar situation in Civil Serv. Com'n for Co. of Wayne v. Boardof Sup'rs., 384 Mich. 363, 184 N.W.2d 201 (1971). In this case, the County Civil Service Commission, the County Board of Road Commissioners, and the County Board of Supervisors all contended that they were the appropriate and the exclusive party to bargain with an employee association representing employees of the Road Commissioners. The court stated:
 From as far back as 1909 P.A. 283, section 10 of the county road law has authorized each board of county road commissioners to `employ' its necessary `servants and laborors.' The section leaves no doubt of original and present intent that each board of county road commissioners shall be the employer of its employees, and that such employees shall be employees of that same board.
The Michigan Supreme Court concluded that the road commission was the `public employer' for purposes of bargaining with the representative of its employers and that the road commission alone was the employer obligated to negotiate under Michigan law. The Michigan Supreme Court relied on the test established by the Michigan Court of Appeals in CivilService Com'n v. Wayne County Board of Super., 22 Mich. App. 287, 177 N.W.2d 449 (1970), where it is stated:
 We find the general characteristics of identification of an employer are: 1) that they select and engage the employee; 2) that they pay the wages; 3) that they have the power of dismissal; 4) that they have the power and control over the employee's conduct (35 Am.Jur., Master Servant, § 3, p. 445). A most significant requisite of one who is an employer is his right to exercise control over the method by which the employee carries out his work. Hence, before we can reach a proper conclusion to this controversy it is necessary to determine what authority and power each of the parties to this litigation have with regard to the employment relationship.
Under Nebraska law, the elected county officials have the power to select and engage the employees in their respective offices. The elected county officials, not the county board, have the power to establish the salaries for persons working in their offices. Neb.Rev.Stat. § 23-1111
(Reissue 1977). The elected officials of a county have the power to terminate their employees. Most importantly, the elected county officials have the right of control and supervision over the work, the power to direct the manner in which the work is to be done, and to determine the result to be accomplished by the people working in their office. Therefore, the elected county officials, not the county board, are the employers of the persons working in their respective offices and would be the appropriate employer to engage in negotiations with an organization representing the employees in their office.
This is not to say that this solution is without problems. While the elected county officials do have extensive control over their employees' salaries and conditions of employment, certain aspects of an employee's conditions of employment are by law specifically established by the county board or by a civil service commission, and the negotiations between the elected county official and his employees must comply with these limitations upon the official's discretion.
A contract negotiated by a county board that attempts to establish terms and conditions of the employment for the employees in the office of an elected official would not be binding on the elected official if the terms of the contract infringe upon areas where the power to make the decision has been left to the discretion of the elected official. A very important aspect of any labor negotiations is the setting of wages, and we will use this as an example. Neb.Rev.Stat. 23-1111
(Reissue 1977) provides: `The county officers in all counties shall have the necessary clerks and assistants for such periods and at such salaries as they may determine with the approval of the county board, whose salaries shall be paid out of the general fund of the county.' The roles of a county officer and the county board in setting salaries for employees of the county officer were discussed in Bassv. County of Saline, 171 Neb. 538, 106 N.W.2d 860 (1960). The plaintiff in this case was the clerk of the Saline County Court. The county judge had fixed her salary at $225 per month but the county board would pay her only $190 per month in accordance with a salary schedule established by the county board. The sole question presented by the case was whether the county board was required to pay the plaintiff the salary established by the county judge. After noting that county commissioners possess no powers except such as are expressly granted or are incidentally necessary to carry such powers into effect, the court stated:
 We conclude from the foregoing authorities that the statute authorizes the county judge to fix the salary of the clerk of the county court. In so doing he must not act arbitrarily, capriciously, or unreasonably. The limitation placed upon the authority of the judge in fixing the salary of the clerk of the county court to the effect that it should be done `with the approval of the county board' authorizes the county board to approve or disapprove the act of the county judge, but in so acting the county board may not act arbitrarily, capriciously, or unreasonably. In the absence of evidence that the salary fixed by the county judge is unreasonable, capricious or arbitrary, the county board is without authority to disapprove it.
From this case, it is clear that the county official and not the county board has the power to establish the salaries of the official's employees. Therefore, if the county board attempted to or did, in fact, negotiate a contract with employees of an elected county official concerning wages, this portion of the contract would not be binding on the elected official because the county board has no power to set wages for such employees and would be acting outside of its statutory authority. The same would be true of any terms of a contract negotiated by the county board when the determination of such terms is specifically left to the discretion of the elected county official.
Very truly yours, PAUL L. DOUGLAS Attorney General Sharon M. Lindgren Assistant Attorney General