Annette LoPresti, Widow of Vincent, Petitioner *v.* Commonwealth of Pennsylvania, Workmen's Compensation Appeal Board and Gulf Construction Co., Respondents.

Argued January 30, 1978, before Judges ROGERS, BLATT and DiSALLE, sitting as a panel of three.

8

*Peter A. DeLiberty,* for appellant.

*David F. Kaliner,* with him *James N. Diefenderfer,* for appellees.

OPINION BY JUDGE ROGERS, April 17, 1978:

Annette LoPresti, the widow of Vincent LoPresti, has appealed from an order of the Workmen's Compensation Appeal Board reversing a referee's award of compensation and of expenses on account of her husband's death. The Board concluded that the referee erred in deciding that Vincent LoPresti's death in an automobile accident resulted from injuries sustained while he was actually engaged in the business or affairs of the employer.

Vincent LoPresti was employed by Gulf Construction Co. as a construction foreman. He was a salaried employe paid weekly on Fridays. On Thursday, June 21, 1973, and for several days before that day, Vincent LoPresti had been in Wilkes-Barre working for Gulf Construction Co. He arrived at his home located in Broomall, Pennsylvania, on Thursday evening, at a time later than he usually came home from work. Friday morning, June 22, 1973, was a rainy day and all of Gulf's construction work was cancelled because of the weather. However, Michael LoPresti, Vincent's

younger brother, who at times worked as a laborer for Gulf, came to Vincent's home at about 9:00 o'clock A.M. and the two went in Michael's car driven by Michael to the offices of Gulf Construction Co. located in Berwyn, Pennsylvania, about ten miles distant from Broomall. Michael LoPresti testified that Vincent LoPresti's purpose in going to the office was to talk with company officers concerning his work in Wilkes-Barre and to pick up his paycheck. Michael LoPresti's purpose was only that of getting his paycheck for work done sometime previously. After arriving at Gulf's offices and waiting for a time for Gulf's president to arrive, Vincent LoPresti entered the president's private office and then came back with each his and Michael's checks. The president then called both brothers into his office where Vincent Lo-Presti and the president discussed the Wilkes-Barre project and other work which might provide some laboring work for Michael LoPresti. The conversation between the president and Vincent LoPresti then moved to the subject of possible house foundation work which Gulf might obtain from one Joseph Mc-Collum, a builder and an acquaintance of Vincent Lo-Presti. Gulf's president told Vincent LoPresti to "contact" Joseph McCollum regarding details for this possible engagement when he, Vincent LoPresti, got home and to report back to him. The brothers Lo-Presti left Gulf's offices at about 11:30 A.M. On the way to Vincent LoPresti's home in Broomall with Michael driving, they were involved in an accident. Vincent LoPresti suffered injuries from which he died the following day.

The evidence also tended to show that Vincent Lo-Presti worked at home. This work consisted principally of filling out progress reports, calling laborers and directing them to job-sites. Vincent LoPresti kept Gulf Construction Co. office materials in his home—

stationery, forms for reporting job information and a directory of his employer's workmen which he used in calling them as needed.

Finally, with respect to the "contact" Vincent Lo-Presti was directed by Gulf's president to make with Joseph McCollum, the following interrogation of Michael LoPresti on cross-examination is significant:

Q   Was there any particular reason why the phone in the Gulf office couldn't be used for the purpose of your brother calling this man McCullam [sic] at the time?

A   Jack had business to perform in his own office with people he had to see. The reception office, as I said, the people were coming in and out and getting calls. Like I said, I don't know whether or not George [another Gulf officer] had a phone or not, but Vincent was accustomed to calling people from his house.

Section 301(c) of The Pennsylvania Workmen's Compensation Act, Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §411, provides in pertinent part:

The terms 'injury' and 'personal injury' as used in this act, shall be construed to mean an injury to an employe, . . . arising in the course of his employment and related thereto . . . and whenever death is mentioned as a cause for compensation under this act, it shall mean only death resulting from such injury and its resultant effects. . . . The term 'injury arising in the course of employment,' as used in this article, . . . shall include all . . . injuries sustained while the employe is actually engaged in the furtherance of the business or affairs of the employer, whether upon the employer's premises or elsewhere. . . .

The cases on the subject of the compensability of injuries suffered by employes while going to or com-

ing from their place of employment are legion. This fact does not make the decision of this or any case in the field easier; it only facilitates the statement of the general principles of law. These are: That ordinarily injuries to employes while off their employer's business premises on trips to and from work are not compensable because they are not considered to have been incurred while the employe is actually engaged in the business or affairs of his employer. Barbieri, Pa. Workmen's Compensation §4.11(1). There is, however an exception to the ground rule which says that in special circumstances involving a clear-cut effort on the part of the employe requested by the employer, the employe may be compensated for injuries received going to or from his home to his work. *Ristine v. Moore,* 190 Pa. Superior Ct. 610, 155 A.2d 456 (1959). Hence, such injuries are compensable if the employe is requested by the employer to do something at his home for the convenience of the employer and the trip home is not simply for the convenience of the employe. *See Workmen's Compensation Appeal Board v. Hickory Farms,* 28 Pa. Commonwealth Ct. 30, 367 A.2d 730 (1976); *Rybitski v. Lebowitz,* 175 Pa. Superior Ct. 265, 104 A.2d 161 (1954). In *Hickory Farms* where the employe was injured while on her way home with records on which she intended to work so that she might lessen her hours of work at her regular place of employment on the following day, we denied compensation because the employe's intended work at home had not been requested by her employer but was for her convenience and not that of the employer. The implication of our holding is that if the employer had requested the employe to take the work home and perform it there, her injuries received on the trip home would be compensable.

The instant case comes within the exception. Vincent LoPresti's employer directed him to be in touch with Joseph McCollum when he, Vincent LoPresti,

got to his home, and to report back. The cross-examination of Michael LoPresti provides an explanation for the employer's direction that the contact be made from Vincent LoPresti's home; to wit, that people were coming in and out of the business office, telephone calls were being received there, Gulf's president was then occupied with other affairs and Vincent LoPresti was accustomed to calling people from his home. Furthermore, Vincent LoPresti was salaried. His employer knew LoPresti was going home at about 11:30 o'clock in the morning of a workday and assigned him something specific to do. The case is in this respect similar to that of *Muir v. Wilson Coal Co.,* 194 Pa. Superior Ct. 487, 168 A.2d 588 (1961), where compensation was awarded for injuries resulting in the death of an employe on his way to work at 7:35 o'clock in the morning, some 35 minutes after his pay had started. Judge ERVIN for the Superior Court commented that the employer must have had some good reason for paying the employe from 7:00 o'clock in the morning, when the employe was supposed to depart from his home, and that this fact alone was sufficient to make the case fall within the exception to the general rule. The following language of that opinion seems applicable to the present case:

This is a case where an accident happened during usual working hours. This is not an 'on the way to work' case nor a deviation from employment situation. The decedent was purposefully pursuing, during his usual and normal working hours, the performance of his obligations for the benefit and convenience of his employer. The decedent was occupying himself consistently with his contract of employment and in a manner reasonably incidental thereto, all of which furthered the business and affairs of his employer: Combs v. Cole Brothers Circus, Inc., 165 Pa. Superior Ct. 346, 67 A.2d 791;

Keim v. Burkholder, 182 Pa. Superior Ct. 460, 127 A.2d 752.

194 Pa. Superior Ct. at 490, 168 A.2d at 589.

The Workmen's Compensation Appeal Board's conclusion that the referee had erred in deciding as a matter of law that Vincent LoPresti was actually engaged in the furtherance of his employer's business was based entirely on our holding in *Rabenstein v. State Workmen's Insurance Fund*, 15 Pa. Commonwealth Ct. 160, 325 A.2d 681 (1974). That case is clearly distinguishable. In *Rabenstein* a construction worker was sent home because of inclement weather. His widow claimed that he was in the course of his employment when killed on the way home because the decedent often worked at home. We held that the death was not compensable because there was no showing that the decedent was doing or would do such work at home on the day in question. The instant case is distinguished from *Rabenstein* because here it is not simply a case of an employe who sometimes worked at home; it is one of an employe who sometimes worked at home and who was on this day requested to perform a work duty when he arrived home in the middle of a working day.

We reverse the order of the Workmen's Compensation Appeal Board and we reinstate the referee's award made May 5, 1976.

ORDER

AND Now, this 17th day of April, 1978, the order of the Workmen's Compensation Appeal Board made December 30, 1976 is reversed, and the referee's order made May 5, 1976 is reinstated.

It is hereby ordered and directed that the Defendant and/or its insurance carrier pay to the Claimant compensation at the rate of $100.00 per week commencing June 23, 1973, to but not including October 23, 1990 for the benefit of the Claimant and Michelle Lynn LoPresti.

It is further ordered and directed that the Defendant and/or its insurance carrier pay to the Claimant compensation at the rate of $100.00 per week, commencing October 23, 1990 and continuing into the future during the Claimant's widowhood, within the terms and limitations of the Act.

It is further ordered and directed that the Defendant and/or its insurance carrier pay to the Claimant by way of reimbursement the following medical and funeral bills:

| | |
|---|---|
| Bryn Mawr Hospital | $102.30 |
| Ambulance | 20.00 |
| Funeral Bill | 750.00 |
| Medical Expenses | 200.00 |
| | $1,072.30 |

All deferred payments of compensation, including the amount for funeral expense and medical expenses, shall bear interest at the rate of 10% in accordance with the Act.

The Defendant and/or its insurance carrier shall pay to the Claimant's attorney 20% of each payment due to the Claimant out of the Claimant's award as attorney's fees and shall pay the same directly to the Claimant's attorney. The balance of the award shall be paid directly to the Claimant.