610 A.2d 1071

**UNITY AUTO PARTS, INC., Petitioner,**

v.

**WORKMEN'S COMPENSATION APPEAL
BOARD (BIGLEY), Respondent.**

**John B. BIGLEY, Petitioner,**

v.

**WORKMEN'S COMPENSATION APPEAL BOARD
(Unity Auto Parts, Inc.), Respondent.**

Commonwealth Court of Pennsylvania.

Argued Feb. 15, 1991.

Decided April 9, 1991.

Publication Ordered May 27, 1992.

James B. Hudzik, for petitioner, Unity Auto Parts, Inc.
Raymond G. Hasley, for petitioner, John B. Bigley.
Keithley D. Mulvihill, for respondent.

Before CRAIG, President Judge, PELLEGRINI, J., and BARRY, Senior Judge.

CRAIG, President Judge.

Unity Auto Parts, Inc. (employer) appeals an order of the Workmen's Compensation Appeal Board which awarded John B. Bigley (claimant) disability benefits for injuries he sustained while traveling home from work.

The claimant appeals the second aspect of the board's decision, which concludes that the employer or its workers' compensation insurance carrier, American Hardware Mutual Insurance Company (American Hardware), is entitled to subrogation as to a civil action settlement payment received by

the claimant from the employer's primary insurance carrier, Federal Insurance Company (Federal), and the excess insurance carrier, Lumbermens Mutual Casualty Company (Lumbermens).

The extensive history of this case has been documented in three decisions by referees and three opinions by the board, as well as a decision by this court and the Pennsylvania Supreme Court.

On September 7, 1973, the claimant sustained serious injuries while riding as a passenger in a vehicle owned by his employer. As a result of the injuries, the claimant is totally disabled. On January 25, 1974, the claimant initiated a trespass action against the employer, and filed a workmen's compensation claim on September 3, 1975.

On March 5, 1976, the claimant agreed to a settlement with the employer, the driver of the vehicle (Albert Larrabee), Federal and Lumbermens. Essentially, the claimant received $325,000 plus $18,000 per year for life, and agreed to discontinue the tort action against the employer and the driver. The claimant also agreed to prosecute his claim for workers' compensation, and that Federal and Lumbermens "shall be subrogated out of any agreement or award" the claimant might receive under The Pennsylvania Workmen's Compensation Act.[1]

On February 25, 1977, after settling the trespass action, the claimant withdrew his workmen's compensation claim. A referee issued a withdrawal order three days later. The claimant did not appeal that order, but on September 20, 1977, the claimant filed a reinstatement petition based on the same circumstances asserted in the original petition.

On July 25, 1978, a referee dismissed the reinstatement petition because of the statute of limitations, § 315 of the Act, 77 P.S. § 602, and because of the res judicata effect of the referee's unappealed order dismissing the original claim petition. The board affirmed the decision, as did this court in *Bigley v. Workmen's Compensation Appeal Board,* 49

---

1. Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §§ 1–1066.

Pa.Commonwealth Ct. 448, 411 A.2d 575 (1980). However, the Supreme Court remanded the case for an administrative determination of the reinstatement claim in *Bigley v. Unity Auto Parts, Inc.,* 496 Pa. 262, 436 A.2d 1172 (1981).

On October 23, 1984, after a series of hearings, Referee Warren concluded (1) that the claimant is not entitled to a reinstatement of the petition because he voluntarily, knowingly and intelligently ratified the withdrawal of his petition; (2) that the claimant did not suffer an injury while in the regular course of employment; and (3) that Federal and Lumbermens are not entitled to subrogation from the employer under the Act.

The board, in a decision dated February 20, 1986, reversed the referee and remanded the case for the entry of an award. On June 26, 1988, Referee Guyton decided that the claimant is entitled to disability benefits and reimbursement of medical expenses, and that Federal is entitled to subrogation.

The employer again asserted to the board that the injury did not occur within the course of employment, and alternatively, questioned the computation of medical expenses relating to nursing care provided by the claimant's family. On May 11, 1990, the board, citing its previous decision, did not address the scope of employment issue, and affirmed the referee's decision as to award, but reversed the referee otherwise by concluding that American Hardware, the compensation carrier, and the employer are entitled to subrogation as to the claimant's settlement recovery, but that Federal does not have a subrogation right against the claimant's compensation benefits.

The employer now contends (1) that the board erred in concluding that the claimant's injury occurred within the course of employment; (2) that the reinstatement of the petition more than one year after the expiration of the statute of limitations prejudiced the compensation carrier, American Hardware; and (3) that the board erred in calculating and awarding benefits for nursing care provided by the claimant's family. Additionally, the claimant has filed a cross-appeal

contending that American Hardware is not entitled to subrogation because there was no third party settlement.

The first issue is whether the claimant's injury occurred in the course of his employment, as defined by § 301(c)(1) of the Act, 77 P.S. § 411(1), which is a question of law based upon the facts in the case. *Oakes v. Workmen's Compensation Appeal Board (Pennsylvania Electric Co.)*, 79 Pa.Commonwealth Ct. 454, 469 A.2d 723 (1984).

The facts of the claimant's employment, as found by Referee Warren, are that the claimant was employed as a salesclerk, which required him to answer the phone, make deliveries and put stock away. The claimant, who had recently graduated from Penn State University, obtained temporary employment with the employer through his ten-year friendship with Albert Larrabee, son of Everett Larrabee, who is the manager of Unity Auto Parts.

On August 30, 1973, Everett Larrabee hired the claimant at the minimum hourly rate. "At the time the contract of employment was entered into between [the claimant] and [the employer], there was no requirement that the employer provide transportation to and from work." (Finding of Fact No. 9.)

The claimant did not own a car at the time, but he had access to cars owned by his wife and his parents. He also obtained transportation for the first two days of employment by riding with a co-employee.

After the three-day Labor Day weekend, the claimant decided to have repair work performed on his parents' car, and he asked Albert Larrabee if he could ride in the company van to and from work. Significantly, the referee found the following:

> FOURTEENTH: Albert Larrabee then discussed the matter with his father, Everett, who consented to an arrangement for Bigley to ride as a passenger in the company van but only for a limited period of time on a day-to-day basis.
> FIFTEENTH: Bigley never discussed the arrangement with Everett Larrabee and was not privy to the conversation between Albert and Everett. Albert never discussed

the arrangement with Bigley. Defendant did not obligate itself to provide transportation to Bigley to and from work but was done only as a convenience to Bigley pending repair of his parent's [sic] car. Bigley was not to be paid for the travel time to and from work when he rode the company van. If the van was not available for transportation then Bigley was required to provide his own means of transportation to and from the work site. Unity did not obligate itself to provide daily transportation to the claimant nor was the claimant obligated to use the transportation furnished.

SIXTEENTH: This Referee rejects that claimant's contention that Everett Larrabee consented to the arrangement because Bigley was a valuable employee to the defendant, Unity, and that a benefit inured to the employer to have him at work. At the time of the arrangement Bigley had only worked a couple of days for Unity and he was in his break in period. This Referee finds that the travel arrangement was for the convenience of Bigley in consideration for his longtime friendship with the Larrabees.

. . . .

NINETEENTH: Claimant then reported to work in the morning with Unity and he worked until 8:00 p.m. when his shift concluded on Friday, September 7, 1973. He rode home that evening after work in the company van driven by Albert Larrabee. The van was being driven to Larrabee's residence in Dunbar so that it will be available the following Monday morning for the trip to Jeannette to pick up supplies. At the time the van was being driven back to Dunbar there were no supplies being carried for delivery and Bigley was not carrying any work home at the behest of the employer. Bigley was not scheduled to work until Monday morning and there were no specific arrangements made as to how he was to get to work on the next work day.

Based on these findings, the referee concluded that the claimant did not suffer an injury while in the course of employment, and therefore, that the claimant is not entitled to compensation.

On appeal, the board reversed the referee and concluded that the injury did occur in the course of employment. The board stated:

> It is clear from the Referee's Findings of Fact that the Defendant's manager approved the arrangement whereby the Claimant would be taken to work in the van owned by the employer. The injury in question did occur while the Claimant was a passenger in the Defendant's van. We are aware that generally speaking an employee is not covered by workmen's compensation while going to and from work. However, one of the well recognized exceptions to this rule is when the employer provides the means of transportation.

▮ An employee's travel to and from work is not within the course of employment unless either (1) the employment contract includes transportation to and from work; (2) the claimant has no fixed place of work; (3) the claimant is on a special mission for the employer; or (4) special circumstances indicate that the claimant was furthering the business of the employer. *W.F. Rittner Co. v. Workmen's Compensation Appeal Board (Rittner)*, 76 Pa.Commonwealth Ct. 596, 464 A.2d 675 (1983).

▮ In the present case, there is no dispute that the claimant did have a fixed place of work, and that the claimant was not on a special mission for the employer. The board, however, citing *W.F. Rittner Co.* and *Oakes*, concluded that the claimant fell under the first exception because the employer provided the means of transportation.

In *W.F. Rittner*, the decedent was killed in a motor vehicle accident while driving a van owned and maintained by the employer. This court held that the decedent's accident occurred while in the course of employment because the employer provided the van to the decedent, as part of the contract of employment, for driving to and from work each day, and for special circumstances resulting from the decedent's being on call twenty-four hours a day to make special deliveries and to respond to emergencies at the employer's premises and out on the road.

In *Oakes,* the decedent was a line foreman who was killed in an accident that occurred while he was driving home in the company car, after responding to an emergency call. This court held that, even though the accident occurred seven hours after the decedent corrected the emergency situation, the decedent was in the course of employment at the time of the accident because the homeward trip was a necessary part of the business excursion.

In the present case, the claimant responded to the question of whether transportation was part of his employment contract by answering "[n]o, it wasn't discussed prior to employment." The claimant further stated:

A.   I can remember talking with Albert about riding in the van. I don't really remember whether I had asked him or he had asked me. It's just been too long, but I can remember him saying that, you know, it would probably be better if I would leave my car there and rode with him in the van.

. . . .

Q.   Did you ever discuss the subject with his father, Everett?

A.   No, I didn't.

The claimant also acknowledged that riding in the van "was a day to day arrangement."

Additionally, Albert Larrabee testified that the employer agreed to provide transportation "only on a limited basis," until the claimant could get his car repaired. Significantly, Albert Larrabee stated:

Q.   Now, if there were a day after you talked to your dad about transportation where you couldn't supply transportation for John, what would happen?

A.   He would just have to find his own way back.

The claimant testified that he never conducted or participated in any business activity for the employer while he was a passenger in the company vehicle, thus distinguishing *Oakes,* but he does contend that this case falls within the special circumstances exception because he "was furthering the busi-

ness of his employer by his attendance at work," which he would not have been able to do without employer-provided transportation.

Initially, special circumstances "must involve some clear-cut effort on the part of the employe, *requested* by the employer...." *Workmen's Compensation Appeal Board v. Hickory Farms*, 28 Pa.Commonwealth Ct. 30, 32, 367 A.2d 730, 731 (1976) (emphasis in original) (quoting *Ristine v. Moore*, 190 Pa.Superior Ct. 610, 615, 155 A.2d 456, 459 (1959)).

Everett Larrabee testified that he "really needed" an employee in the store because two employees were leaving to return to school. However, Larrabee also testified that the oral agreement to provide transportation was not a contract, but that "[i]t was an agreement to the fact that if we did not provide [the claimant] transportation, he did not have a job."

In *Hall v. Midland Insurance Co.*, 320 Pa.Superior Ct. 281, 467 A.2d 324 (1983), a case factually similar to the present case, the Superior Court addressed a situation involving a claimant, employed as a salesman, who was injured in an automobile accident, which occurred while he was driving home from work in a vehicle owned by the employer. Although the employer provided the claimant with a leased car, the court held that the accident did not occur in the scope of employment because the oral contract of employment did not include transportation to and from work; the claimant maintained a fixed place of work in the employer's office; and the claimant was not on a special mission for the employer or engaged in the furtherance of the employer's business at the time of the accident.

In the present case, although the employer needed employees in the store, the record does not indicate that the employer specifically requested the services of the claimant to further the business. Essentially, the employer, in need of an additional salesclerk, imposed the universal working condition of any person employed as a store salesclerk—that he arrive at the store to work an appointed shift.

■ As in *Hall,* the fact that the claimant was injured while traveling home in the employer's vehicle does not automatically support a conclusion of law that the injury occurred in the course of employment. Substantial evidence in this case indicates that the employer gratuitously agreed to provide transportation on a temporary basis for the mutual benefit of the claimant and the employer, but the evidence does not support a finding that the employment contract included transportation or that special circumstances required the claimant's presence at the store, thus making this case distinguishable from *W.F. Rittner.*

Therefore, the board erred as a matter of law in concluding that the claimant's injuries occurred while in the course of employment, and that the claimant is entitled to workmen's compensation benefits. Accordingly, no issues as to subrogation and calculation of benefits remain to be decided.

The order of the board is reversed as to compensation liability, in that the claimant was not in the course of employment at the time of the injuries, and vacated as to the determinations regarding the subrogation issues.

## ORDER

NOW, April 9, 1991, the order of the Workmen's Compensation Appeal Board, dated May 11, 1990, No. A–96948, is reversed as to compensation liability, in that the claimant did not sustain a compensable injury. The remainder of the board's order is vacated.