**Gerard J. WILLIAMS, Petitioner,**

v.

**WORKERS' COMPENSATION APPEAL BOARD (MATCO ELECTRIC COMPANY, INC. and Northern Insurance Company), Respondents.**

Commonwealth Court of Pennsylvania.

Argued Feb. 11, 1998.

Decided Dec. 11, 1998.

**3.** Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. § 513(22).

Thomas M. Holmes, Scranton, for petitioner.

Alan P. Schoen, Scranton, for respondent.

Before COLINS, President Judge, and DOYLE, J., SMITH, J., PELLEGRINI, J., KELLEY, J., FLAHERTY, J., and LEADBETTER, J.

LEADBETTER, Judge.

Claimant, Gerard J. Williams, appeals from the order of the Workers' Compensation Appeal Board (Board) under the Workers' Compensation Act (the Act).[1] The issue presented on appeal is whether claimant's injuries, which occurred while he was driving to work, fall within an exception to the "coming and going" rule.[2] We ordered this case heard *en banc* so that we could address inconsistencies between *Kear v. Workmen's Compensation Appeal Bd. (Fairman Drilling Co.)*, 102 Pa. Cmwlth. 193, 517 A.2d 586 (Pa.Cmwlth.1986) and other published opinions of this court, particularly *Bechtel Power Corp. v. Workmen's Compensation Appeal Bd. (Postlethwait)*, 167 Pa.Cmwlth. 544, 648 A.2d 1266 (Pa.Cmwlth.1994), *alloc. denied,* 540 Pa. 585, 655 A.2d 516 (1995), and *Peer v. Workmen's Compensation Appeal Bd. (B & W Constr.)*, 94 Pa.Cmwlth. 540, 503 A.2d 1096 (Pa. Cmwlth.1986). After review, we specifically reaffirm *Peer* and *Bechtel* and the consistent prior line of cases in this court, and overrule *Kear*.

The record reflects that claimant was employed by Matco Electric Company (Matco) as an apprentice electrician on a project in Sayre, Bradford County, Pennsylvania. The job site in Sayre was approximately ninety-five miles from claimant's home, and he was required to report to work at the job site everyday at 7:00 a.m. Claimant made the

---

1. Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §§ 1 – 1041.4, 2501–2626.

2. The "coming and going" rule refers to the general principle that injuries received by an employee while traveling to and from work are not compensable under the Act because the employee is not considered at the time of the injury as being in the course of employment. *Biddle v. Workmen's Compensation Appeal Bd. (Thomas Mekis & Sons, Inc.),* 539 Pa. 343, 346, 652 A.2d 807, 808–09 (1995); *Bechtel Power Corp. v. Workmen's Compensation Appeal Bd. (Postlethwait),* 167 Pa.Cmwlth. 544, 648 A.2d 1266, 1271 (Pa. Cmwlth.1994), *alloc. denied,* 540 Pa. 585, 655 A.2d 516 (1995).

commute on a daily basis, either driving his brother-in-law's truck or car pooling with other employees.

Claimant had obtained the job with Matco as a result of a referral from the business office of Local Union 81 of the International Brotherhood of Electrical Workers, of which he was a member. Pursuant to union rules, claimant was required to accept the job to remain eligible for future union referrals. The jurisdiction of the union encompasses eight counties in Northeastern Pennsylvania, including Bradford. The applicable collective bargaining agreement, referred to as the "Inside Agreement,"[3] provided that claimant would receive a specific hourly rate if he worked within the territory designated as zone A, and an additional 49 cents per hour if he worked outside zone A in zone B.[4] Sayre was located in zone B and, therefore, claimant received the additional 49 cents per hour, or an additional $3.92 per day.[5] Claimant was paid for neither the time nor the expenses he incurred commuting to and from work. With respect to travel expenses and transportation, the agreement provided:

> Section 9 When the employer has no permanent shop located in the jurisdiction of the Union, then under such circumstances Scranton shall be considered the city in which the shop is located.[6]

> . . . .

> Section 16 The employer shall pay for traveling time and furnish transportation from *shop to job, job to job, and job to shop,* within the jurisdiction of the Union. On work outside of the jurisdiction of the Union, the employer shall furnish transportation, board, and all necessary expenses.

> Section 17 No travelling time shall be paid before or after working hours to workmen for travelling to or from any job in the jurisdiction of the Union where workmen are ordered to report on the job.

Claimant's Exhibit No. 3, N.T. of March 23, 1993. The agreement also allowed Matco to transfer employees from job site to job site within the jurisdiction of the union.

Claimant worked for Matco approximately four weeks until he had an automobile accident while commuting to work on March 12, 1992. At that time, he lost control of the truck he was driving, crashed and sustained injuries, which left him partially paralyzed. Thereafter, claimant filed a claim petition seeking benefits under the Act. Matco denied the petition and the matter was eventually heard by a Workers' Compensation Judge (WCJ), who granted benefits. The Board reversed, and claimant appealed to this court.

Whether an employee is acting within the course of his employment at the time of an injury is a legal question, determined on the basis of the WCJ's factual findings, and subject to this court's plenary review. *Olszewski v. Workmen's Compensation Appeal Bd. (Royal Chevrolet),* 167 Pa. Cmwlth. 521, 648 A.2d 1255, 1257 (Pa. Cmwlth.1994). Generally, under the "coming and going" rule, injuries sustained by an employee while commuting to and from work are not compensable under the Act. *Id.* This rule is premised on the recognition that an employee traveling to or from work is usually neither on the employer's premises, nor engaged in the furtherance of the employer's business. *Peer,* 503 A.2d at 1098.[7] There

---

**3.** Although Matco is not a party to the collective bargaining agreement, it did agree to its application at all Matco work sites within the union's jurisdiction.

**4.** Zone B encompassed the area beyond a 60–mile radius of the courthouse in Scranton, Pennsylvania. According to claimant's appellate brief, this wage differential was paid to all electricians who worked in Zone B regardless of where they lived or how far they traveled. Brief for Appellant *at 13.*

**5.** The agreement also provided a procedure for the referral of apprentice electricians through the union. Pursuant to that procedure, prefer-

ence was given to apprentices who resided in the labor market where the work site was located. In this case, since no apprentice electricians lived in the Bradford County labor market, apprentices, such as claimant, were referred from and traveled from outside of that area.

**6.** Pursuant to this subsection, Matco's shop was deemed to be located in Scranton.

**7.** In general, the employee's obligation to the employer begins when he arrives at work and ends when he completes his duties and leaves the employer's premises. The employee's commute to and from work is not deemed to be a part of

are four exceptions to this rule, however, and an injury sustained while traveling to or from work will be deemed compensable if: (1) the employment contract includes transportation to and/or from work; (2) the claimant has no fixed place of work; (3) the claimant is on special assignment for the employer; or (4) special circumstances are such that the claimant was furthering the business of the employer. *Id. See also Bechtel*, 648 A.2d at 1271; *Olszewski*, 648 A.2d at 1257. Of these, we need deal only with the first and fourth.[8]

Although he inexplicably based his decision only on the fourth exception, the WCJ found that the collective bargaining agreement required the employer to provide transportation. He based this conclusion on the provision in Section 16 that transportation was to be provided from *shop to job*. He then interpreted the contract to provide that each day the employee was responsible for transporting himself to the shop (here, because there was no shop, a theoretical location in Scranton) and the employer was then responsible for transporting him from Scranton to the location of the job. Since claimant was directed to report directly to the job, the WCJ reasoned that by transporting himself to the job, claimant was *fulfilling the employer's* responsibility and, thus when doing so was furthering the employer's interests. Adopting the WCJ's reading of Section 16, claimant argues on appeal that both the first and fourth exceptions are satisfied. However, the WCJ's interpretation of the contract was plainly erroneous, since it disregarded the unambiguous provisions of Section 17. As the Board noted,

> Section 17 reads as follows:
>
> No traveling time shall be paid before or after working hours to workmen for travel-

ing to or from any job in the jurisdiction of the Union where workmen are ordered to report to the job.

A review of Sections 16 and 17 together indicates that there are clearly two separate provisions in this Agreement concerning transportation and travel expenses. Section 16 deals with situations in which an employee is centered at the shop or is moved from job to job. Section 17, on the other hand, deals with situations in which an employee is directed to report directly to the job site.

In the instant case, Claimant was to report directly to the job site. Thus the provisions of Section 16 do not apply to the instant Claimant and the WCJ was incorrect in applying them to justify the payment of benefits....

*Williams v. Matco Electric Co., Inc.*, (No. A94–1890, filed June 5, 1997), slip op. at 7.

In reversing the WCJ's award of benefits, the Board relied upon *Peer* and *Bechtel*. In *Peer*, the claimant, a boilermaker who commuted approximately thirty-five miles to and from work each day, sought benefits under the Act after he sustained injuries while riding his motorcycle to work. Under the terms of a collective bargaining agreement (CBA) between the claimant's employer and his union, the claimant received a fixed amount as car fare, which was calculated according to a formula which utilized the distance between the claimant's place of employment and a point in the City of Pittsburgh, regardless of the distance actually traveled. In affirming the denial of benefits, this court held that although the provision of the travel allowance provided the claimant with extra compensation, the CBA *did not* obligate the employer to provide claimant

---

the employee's job responsibilities; rather it is viewed as merely serving the employee's own interest or convenience.

**8.** Claimant does not claim that the third exception applies, and his assertion regarding the second does not appear to have been raised below. At all events, it is devoid of merit, since it is undisputed that throughout the time claimant worked for Matco he worked only at the Sayre job site. In making this argument, claimant relies on *Peterson v. Workmen's Compensation Appeal Bd. (PRN Nursing Agency)*, 528 Pa. 279, 597

A.2d 1116 (1991), where the Supreme Court held that an employee of a temporary agency never has a fixed place of work such that when traveling to an assigned workplace, the employee is furthering the agency's business. *Id.* at 287–88, 597 A.2d at 1120–21. Not only is *Peterson* distinguishable from the instant case, but we have interpreted the holding of that case to apply specifically to temporary employees, which claimant is not. *See Foster v. Workmen's Compensation Appeal Bd. (Ritter Bros., Inc.)*, 162 Pa. Cmwlth. 565, 639 A.2d 935, 938 (Pa.Cmwlth.), *alloc. denied*, 539 Pa. 683, 652 A.2d 1327 (1994).

with transportation, nor did it allow the employer to exercise any control over the claimant's means of transportation. 503 A.2d at 1098.

Similarly, in *Bechtel,* the claimant, a plumber and pipefitter, was injured in an automobile accident while returning home from work. The claimant lived in Lancaster, Pennsylvania and commuted by car pool on a daily basis to and from his job in Limerick, Pennsylvania. Pursuant to the terms of the applicable CBA, all employees, including the claimant, received a $5.00 per diem travel allowance without consideration as to whether the employees used their own transportation to commute or the actual miles traveled. Relying on *Peer,* this court held that the contractual payment of a per diem travel allowance to all employees could not, as a matter of law, be construed to be the provision of transportation such that the employee's commute was within the course of his employment. *Bechtel,* 648 A.2d at 1272.

On the other hand, claimant argues that the first and fourth exceptions apply under the analysis of this court in *Kear.* In that case, the claimant's commute was approximately 100 miles, and claimant routinely received an extra $20.00 a day to cover his travel expenses, whether he obtained lodging near the drill site or returned home at the end of the work day. We held:

> In the present case, we conclude that claimant's traveling to work was in furtherance of his employer's affairs. The nature of the employer's undertaking involved establishment of workplaces at various and sundry sites, creating an occupational environment in which work could be and was concentrated far from an employee's home.
>
> . . . .
>
> It is undisputed that, in recognition of such work conditions, a per diem was paid for those who found lodging near the drill site. These payments were made in recognition of the unique character of the employer's business, to make advantageous and attractive continued employment. Such monies were, however, as we are

satisfied, paid to the claimant when he chose to undertake the long commute. In the presence of such facts, and in light of the nature of the employer's business, we believe that claimant's contract can be said to have included transportation to and from work, and that such transportation proximately furthered the employer's business.

517 A.2d at 590 (footnote and citations omitted).

Initially it should be noted that the court in *Kear* appears to have found its salient facts to establish entitlement under both the first and fourth exceptions, without attempting to distinguish between them nor to focus upon their different elements. For the sake of clarity, we will deal with the exceptions seriatim.

It is beyond dispute that *Kear, Peer, and Bechtel* and this case all share the same material fact pattern. That is, the claimant received some additional compensation based upon the location of his job site or as a travel allowance, but was not directly compensated for his particular expense of commuting. The employers neither provided nor controlled the means of transportation. None of the claimants were requested to take any work home, nor did any have work-related responsibilities after leaving the job site. In all four cases it may validly be inferred (as it was by the Board in *Bechtel,* the court in *Kear* and the WCJ below) that the employer paid the additional compensation as an incentive to attract workers who might otherwise find the job undesirable because of the commute. Nonetheless, in *Peer* and *Bechtel,* we clearly held that these facts did not give rise to the conclusion that the employer provided transportation within the meaning of the first exception, while the panel in *Kear* held to the contrary. We believe that *Peer* and *Bechtel* state the correct principle of law, *i.e.,* that where travel allowances are not directly related to the expense or distance of the employee's commute, and where the employer does not provide or control the means of transportation used, the contract cannot be deemed to include transportation to and from work.[9]

9. The first exception applies in circumstances where by contract, either express or implied, the

This holding does not entirely dispose of the issues in this case, however, because *Kear* also grounded its holding on the fourth exception, special circumstances such that the claimant was furthering the business of his employer. *Kear* reasoned that the additional compensation was paid "to make advantageous and attractive continued employment" and thus that the employee's undertaking of the commute "proximately furthered the employer's business." This holding also places *Kear* in conflict with *Peer* and *Bechtel.* In *Peer*, we noted without further discussion of the fourth exception that, "the [travel] allowance did not further the business of Employer." 503 A.2d at 1098. In *Bechtel*, the Board had adopted the *Kear* analysis, virtually *in haec verba* ["These payments were made ... to make such continued employment of skilled labor advantageous.... Given this set of facts, we are satisfied that ... such transportation proximately furthered Defendant's business" (emphasis omitted)]. 648 A.2d at 1270. This court reversed, following *Peer.*

If one disregards *Kear*, it is not surprising that *Peer* and *Bechtel* gave only brief attention to the fourth exception; it has long been held that the special circumstances entitling an employee to benefits for injuries sustained during a commute must involve an act "in which the employe was engaged ... by order of the employer, express or implied, and not simply for the convenience of the employe." *Rybitski v. Lebowitz*, 175 Pa.Super. 265, 104 A.2d 161, 162 (Pa.Super.1954). *Accord Setley v. Workmen's Compensation Appeal Bd.*

*(Kawecki Berylco Indus.)*, 69 Pa.Cmwlth. 241, 451 A.2d 10 (Pa.Cmwlth.1982). Thus, in *Lopresti v. Workmen's Compensation Appeal Bd. (Gulf Constr. Co.)*, 35 Pa.Cmwlth. 7, 384 A.2d 1017 (Pa.Cmwlth.1978), an injury sustained on the claimant's return home was found to be within the course of employment where the employer requested the employee to call a builder from home and then report back to employer. This court held, "[t]he decedent was purposefully pursuing, during his usual and normal working hours, the performance of his obligations for the benefit and convenience of his employer." *Id.* at 1019–1020. Similarly, in *William F. Rittner Co. v. Workmen's Compensation Appeal Bd. (Rittner)*, 76 Pa.Cmwlth. 596, 464 A.2d 675 (Pa.Cmwlth.1983):

> As part of the contract of employment, the Employer supplied the Decedent with ... a utility van which the Decedent drove back and forth to work each day. The Decedent was on call 24 hours a day, and utilized the van not only during the regular work day, but also after working hours to make special deliveries, and to respond to emergencies at the Employer's premises and out on the road.

*Id.* at 677. Under these circumstances:

> [I]t was necessary for the Decedent to drive the van back and forth to work each day in order to comply with the Employer's requirement that he be prepared to respond to emergencies at any time of the day or night. In light of these facts, the conclusion is inescapable that the Decedent, at the time of the accident, was en-

---

employer is obligated to provide the employee with a means of transportation to and/or from work. *See generally Morucci v. Susquehanna Collieries Co.,* 297 Pa. 508, 147 A. 533 (1929); *Campagna v. Ziskind,* 287 Pa. 403, 135 A. 124 (1926); *Dunn v. Trego,* 279 Pa. 518, 124 A. 174 (1924); *Knorr v. Central Railroad of New Jersey,* 268 Pa. 172, 110 A. 797 (1920). *See also William F. Rittner Co. v. Workmen's Compensation Appeal Bd. (Rittner),* 76 Pa.Cmwlth. 596, 464 A.2d 675 (Pa.Cmwlth.1983); *Nilsson v. Nepi Bros.,* 138 Pa.Super. 107, 9 A.2d 912 (Pa.Super.1939), *aff'd,* 338 Pa. 561, 14 A.2d 75 (1940). In such cases, the transportation is part of the consideration for the employee's services and it is usually deemed to be offered because it inures to the benefit of the employer, e.g., it serves as an inducement for the employee to accept the position with the employer, *Campagna; Susman v. Kaufmann's*

*Dep't Store,* 182 Pa.Super. 467, 128 A.2d 173 (Pa.Super.1956), or it insures that the employees arrive at work promptly when public transportation is not available, *Hockenberry v. State Workmen's Ins. Fund,* 133 Pa.Super. 249, 2 A.2d 536 (Pa.Super.1938); *Nilsson.* It is important to note, however, that when transportation is provided to the employee as a mandatory term of the employment contract, the employee's entitlement to benefits for injuries which occur during the work commute does not require a specific finding that the provision of the transportation serves to benefit the employer's interest. *See William F. Rittner Co.; Hastings v. Pennsylvania Nat'l Mut. Cas. Ins. Co.,* 407 Pa.Super. 282, 595 A.2d 1150 (Pa.Super.1991), *alloc. denied,* 530 Pa. 645, 607 A.2d 255 (1992). Such a finding would relate to the fourth, not the first exception.

gaged in furtherance of his employer's business.

*Id.* at 679. In contrast, in *Workmen's Compensation Appeal Bd. v. Hickory Farms,* 28 Pa.Cmwlth. 30, 367 A.2d 730 (Pa.Cmwlth. 1976), the employee, voluntarily and on her own initiative, took work home at night to decrease her workload for the following day. We held that her injuries sustained on the way home were not within the course of employment because working at home was for her own convenience.

Finally, in *Unity Auto Parts, Inc. v. Workmen's Compensation Appeal Bd. (Bigley),* 148 Pa.Cmwlth. 4, 610 A.2d 1071 (Pa.Cmwlth. 1991), *alloc. denied,* 528 Pa. 618, 596 A.2d 801 (1991), we specifically rejected an argument quite similar to the analysis later adopted in *Kear.* There, although not part of his employment contract, claimant was temporarily allowed to ride in the company van to and from work on a day-to-day basis pending repair of his parents' car. While doing so, he was in an accident and was seriously injured. The employer testified that he "really needed" an employee in the store because two employees were leaving to return to school, and he understood that "if we did not provide [the claimant] transportation, he did not have a job." *Id.* at 1075. Thus, claimant argued that "this case falls within the special circumstances exception because he 'was furthering the business of his employer by his attendance at work,' which he would not have been able to do without employer-provided transportation." *Id.* We rejected this argument and reversed the Board's holding that the injuries occurred in the course of employment.

Review of the above cases makes clear that *Peer* and *Bechtel* were decided in accordance with clear precedent and it was *Kear* which varied from it. Of course, in a general sense

it is always in the employer's interest that employees come to work, particularly if some circumstances of the job, such as its duties or location, make it unattractive. This interest, far from being a special circumstance, is a universal one. Taken to its logical extreme, the *Kear* analysis would eviscerate the "coming and going" rule altogether. Therefore, it is overruled.

■ In conclusion, based upon the evidence of record, we hold that claimant has failed to establish that his travel to and/or from work falls within either the first or fourth exception to the "coming and going" rule. The collective bargaining agreement did not obligate Matco to provide claimant with transportation or the means of commuting to work and claimant's travel to work was not in response to any special request or direction by Matco.[10]

Accordingly, the order of the Board is affirmed.

### ORDER

AND NOW, this 11th day of December, 1998, the order of the Workers' Compensation Appeal Board in the above captioned matter is hereby affirmed.

FLAHERTY, Judge, dissenting.

I respectfully dissent from the majority opinion which now enables an employer to "collectively bargain" its way out of the Workers' Compensation Act (Act) and permits other employers to evade the test of "furtherance of the employer's interests" merely by promulgating a travel payment policy that can evade the Act.[1]

Claimant Gerald J. Williams (Claimant) filed a claim petition alleging that the seri-

10. Our conclusion is consistent with our decision in *Davis v. Com., Workmen's Compensation Appeal Bd. (Foodarama Supermarkets, Inc.),* 41 Pa. Cmwlth. 262, 398 A.2d 1105 (Pa.Cmwlth.1979). There, the claimant, a pharmacist, was involved in a fatal accident while returning home from working in his employer's Bethlehem store. Although the claimant usually worked in Reading, he was expected to periodically work in employer's stores in Allentown and Bethlehem. Under the terms of his employment contract, the claim-

ant received an increased hourly rate when he worked in either Allentown or Bethlehem. Under those circumstances, we held that the claimant did not fall within any of the exceptions to the "coming and going" rule and, therefore, was not in the course of his employment at the time of his accident. *Id.* at 1106.

1. The Pennsylvania Workers' Compensation Act is the Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §§1–1041.4; 2501–2626.

ous, paraplegic injuries he sustained in a motor vehicle accident on an icy roadway while traveling from Scranton to Bradford County were sustained in the course of his employment. The Workers Compensation Judge (WCJ) awarded Claimant temporary and total disability benefits, medical and/or litigation costs. The Workers Compensation Appeal Board (WCAB) reversed the decision of the WCJ and from that order, Claimant appealed to this Court.

The importance of the special circumstances of this case, especially the location, terrain, distance required to be traveled, risks of severe hazardous weather and road conditions and the role of the bargaining agreements are not readily apparent from the majority opinion.

Claimant was involved in a one-car automobile accident on March 12, 1992, approximately one mile north of the New York–Pennsylvania border. The weather was severe enough to discourage Claimant's usual travelling companion to turn back after starting out. Claimant, however, being an apprentice, continued travelling from Scranton to Sayre in Bradford County (job site) when, while crossing an overpass, Claimant's pickup truck struck a patch of ice, skidded, left the roadway and overturned several times. Claimant was thrown from the vehicle and sustained severe injuries, including two fractured thoracic vertebrae (T8–9), a bruised spinal cord and a fractured right and left pelvic iliac bone. He is confined to a wheelchair and does not have any motor control below the sternum, including the use of his lower extremities.

Claimant was employed as an apprentice electrician by Matco Electrical (Employer) from February 11, 1992, until March 12, 1992, at a project where Employer was the primary contractor for a construction project. Claimant worked from 7:00 a.m. to 3:30 p.m. daily. His home in Dunmore (a suburb of Scranton) was exactly 100.3 miles from the job site and the job site was 95 miles from the Scranton city limits. In order to arrive timely at work, he had to rise at 4:00 a.m. and leave his home no later than 4:50 a.m. During the months of February and March, much of the drive to work was done in darkness. Working this job required Claimant to be on the road four hours and twenty minutes per day because he was not earning enough at the apprentice rate to be able to afford to stay in a motel in the area of the job site.

Claimant was an apprentice journeyman (apprentice) with Local Union 81 of the International Brotherhood of Electrical Workers (IBEW) and as such, subject to the provisions of a collective bargaining agreement, a document known as the "Inside Agreement" (CBA).[2] Claimant was in the fifth period of a six-period/five-year electrician apprenticeship requiring 8000 hours of education and training while paying from one-third of the journeyman's rate of $18, i.e., $6 in the first year to two-thirds in the fifth period, i.e., $12.49.

The Business Manager for the IBEW, Local 81, testified that while a journeyman may refuse an assignment on the first turn, apprentices may not refuse an assignment, even in a distant locale, such as Bradford County, under any circumstances, because this would be a disadvantage to a contractor. The CBA requires a ratio of three journeymen to one apprentice. Inclusion of the lower paid apprentice results in a lower aggregate electrician's wage for the contractor, thus lowering labor costs and making the contractor more competitive when bidding for a job.

The membership of the IBEW is concentrated in Lackawanna County. There were no apprentices in Bradford County. Thus, once Claimant was assigned to Employer's job in Sayre, he was required to make the 200–mile, four-hour and twenty-minute round

---

2. The "Inside Agreement" was simply a separate collective bargaining agreement for IBEW members not working for a utility, e.g., power company. The parties to the Agreement were the IBEW's Local 81 (in which Claimant was an apprentice for this job) and the Scranton Division of the Penn–Del Jersey Chapter of the National Electrical Contractors Association (NECA). Even though Employer is not a member of NECA, the Employer signed a Letter of Assent and was thereby entitled to be covered by the terms of the Inside Agreement. (R.R. at 41a–42a, N.T. 35–36).

trip every day in order to comply with the apprenticeship terms of the CBA. If Claimant or other apprentices refused to travel there, the employer would have been forced to incur a higher aggregate wage rate by using all journeymen, assuming journeymen would choose to accept employment in that vicinity at that time of the year.

Under the CBA, a contractor has the right to transfer employees in the IBEW to any job it has within the eight-county geographical region encompassed by Local 81. However, in order for the injuries sustained by Claimant to be work-related and compensable, Claimant's situation must fall into one of the exceptions of the "coming and going rule." Generally, injuries sustained while commuting to and from, or "coming and going" from work are not compensable under the Act, since they are not considered to be in the course of employment (the coming and going rule). *Peer v. Workmen's Compensation Appeal Board (B & W Construction)*, 94 Pa.Cmwlth. 540, 503 A.2d 1096 (Pa.Cmwlth. 1986). The majority recognizes the exceptions to the "coming and going rule", by which a travelling employee will be considered to have sustained an injury in the course of employment if he meets any one of the following exceptions:

1) Claimant's employment contract included transportation;

2) Claimant had no fixed place of employment;

3) Claimant was on a special assignment; or

4) Special circumstances are such that the Claimant was furthering the business of the employer.

*City of Monessen School District v. Workmen's Compensation Appeal Board*, 155 Pa. Cmwlth. 56, 624 A.2d 734 (1993); *Kear v. Workmen's Compensation Appeal Board (Fairman Drilling Company)*, 102 Pa. Cmwlth. 193, 517 A.2d 586 (1986).

The majority opinion perceives a conflict in the holdings of *Peer* and *Kear* and mistakenly attempts to settle it by holding that the facts of this case are the same as in *Peer*,

*Kear* and *Bechtel.*[3] The key factor to determining whether or not an injury during travel is compensable, however, should not be the *travel allowance* alone, but should be *all* the circumstances of the travel, e.g., location, extent, risk, etc., of which *payment* is only *one* factor, especially considering whether the nature of the *travel* furthers the business interests of the employer.

Strikingly, in contrast to Claimant's case, in *Peer*, the claimant was a boilermaker who commuted to the job site in Ohio only thirty-five miles each way. He sustained serious injuries while on his way to work when he was involved in a motor vehicle accident. On an appeal to this Court, we analyzed §301(c) of the Act, 77 P.S. §411, which states that compensable injuries include those "sustained while the employee is actually engaged in the furtherance of the business or affairs of the employer, whether upon the employer's premises or elsewhere." The *Peer* court also discussed the exceptions to the general "coming and going" rule, which follow the criteria in *Jones v. Workmen's Compensation Appeal Board (Rehabilitation Coordinators Inc.)*, 88 Pa.Cmwlth. 426, 489 A.2d 1006 (Pa.Cmwlth.1985). In *Peer*, a collective bargaining agreement (CBA) between the employer and claimant's union provided for a travel allowance. Commonwealth Court held merely that WCAB properly rejected the WCJ's legal conclusion that the CBA, *in and of itself*, places claimant's travel to and from work within the course of his employment.

Although, in *Peer*, the CBA provided extra compensation to union members, *Peer* did not require employer to provide transportation and did not include any special circumstances regarding the travel involved, both of which are present in the instant case. In addition, the Court expressly found that the allowance in *Peer* did not further the employer's business. Accordingly, this Court held that the CBA did not bring claimant's transportation to and from work within the scope of his employment. *Peer*, thus, first focused on the furtherance of employer's interests and only then found nothing in the record,

---

**3.** *Bechtel Power Corp. v. Workmen's Compensation Appeal Board (Postlethwait)*, 167 Pa.Cmwlth.

544, 648 A.2d 1266 (Pa.Cmwlth.1994), *alloc. denied*, 540 Pa. 585, 655 A.2d 516 (1995).

including the travel pay provisions of the CBA, to justify the WCJ's reliance on the travel pay as benefiting the employer to the extent required by the Act.

In *Bechtel,* the claimant was killed while driving home from work. The claimant was paid an additional $5.00 per day for travelling to his job site. The Court noted, however, that the employee worked at only one location and that the $5.00 per day did not constitute travelling expenses because they were paid whether an employee drove or car pooled to work and were paid without consideration for the actual distance that an employee needed to travel to work.[4] If we follow *Bechtel,* the Claimant's differential of 49 cents per hour is paid to him whether or not he drives or carpools and, therefore, should *not* be considered a travel allowance either. The majority relies on the characterization of the 49 cents per hour in denying this Claimant disability benefits when he was clearly injured while furthering the Employer's business.

In *Kear,* there was no formal employment contract. The claimant in *Kear* testified that he was paid $20 per day for travel expenses. The employer in *Kear* alleged that the $20 was for lodging, but that claimant chose to use it to travel to and from work instead. The Referee in *Kear* found that the claimant was furthering the employer's business and that the nature of the employer's business involved establishing work places at "various and sundry sites." Using three factors, the Referee in *Kear* found that the monies were for travel expenses and thus the claimant fit within an exception to the "coming and going" rule. The three factors in *Kear* are:

(1) Was the employer required to provide transportation?

(2) Was the employer allowed to exercise control over the means of transportation chosen by individual employees?

(3) Did the allowance further the business of the employer?

On appeal, this court emphasized that it was manifest that the third factor was to be the focus in determining whether the receipt of money for travel expenses brings the employee within the course of his employment.

Despite the differences in the facts, the majority in the instant case seeks to settle the diverse results between *Kear* and *Bechtel* based on the *Peer* line of cases by following the reasoning of *Peer* and unnecessarily overruling *Kear.* Unfortunately, such a solution will only result in further confusion because it relies strictly on an employer's travel payment policy or on the travel payment provisions of an agreement which was collectively bargained rather than on the legislated intent and statutory purpose expressed in the Act, for which protection the workers, in effect, have traded in their right to sue the employer at common law.

In accordance with §301(c) of the Act, 77 P.S. §411, a compensable injury of an employee occurs when the employee is actually engaged in furtherance of Employer's business. *Peer.*

While the majority seeks to overrule *Kear,* in concluding that Claimant's injuries are not compensable when Claimant was clearly and *solely* furthering the interests of the Employer, the majority has, in effect, overruled *Peer.*

As the facts in *Kear, Peer* and *Bechtel* evolved, each succeeding case focused more and more on the varieties of travel expense policies and plans of the employer rather than emphasizing the complete picture of all the other factors that determine what furthers the Employer's business, as clearly stated in Section 301(c) of the Act, 77 P.S. §441.

Resolution of the conflicts in *Peer, Kear* and *Bechtel* is equally accomplished under the Act when it is held that injuries sustained during travel which is primarily in furtherance of an employer's business are compensable and that such a factual determination is best left to the factfinder taking into consideration that the method of travel compensation is only one factor in making such a determination.[5]

---

**4.** *Compensation benefits were denied on the* grounds that the employee was outside the

course and scope of his employment at the time of his injuries.

**5.** In this case, the CBA contains the following

Employer was found to have its place of business in New York State, and, having none within the union's jurisdiction, Scranton was, thereby, designated as the "shop" under the terms of Section 9. Under the terms of Section 16, Employer was required to *furnish* (not just pay for) transportation from shop (Scranton) to job (Bradford) and return. This is simply unable to be contradicted. It is plain and clear on the face of the Agreement.

In this case, the facts clearly demonstrate that the WCJ properly found that the Claimant, in travelling to the job site, did so primarily for the benefit of the Employer, not for himself and not for the union. WCJ concluded that this Section obligates Employer to provide transportation and, since Employer failed to do so, Claimant was fulfilling Employer's obligation by providing his own vehicle.

The majority opinion reviewed Section 16 in conjunction with Section 17 and held that they were two separate provisions: Section 16 dealing with shop to job type travel and Section 17 where an employee is directed to report directly to the job site. The majority holds that because the Claimant reported directly to the job site, the provisions of Section 16 requiring Employer to provide transportation did not apply and that WCJ was incorrect in applying Section 16 to include transportation benefits under *Kear*. This conclusion is not apparent from the plain language of the CBA.

The only way that Section 16 (requiring the Employer to furnish transportation) is not applicable to this Claimant is if the job site is not within the jurisdiction of the union. Although CBA Section 17 provides that, "*no travelling time* shall be paid ... when workmen are ordered to report on the job," Section 17 only applies to *payment* for travel-

ling, while Section 16 not only applies to payment, but also to Employer's additional obligation to *furnish transportation* if the job is within the union's jurisdiction, as well as paying travelling time, board, etc., but not to furnish transportation when the job is not within the jurisdiction.

Under the provisions of the CBA, Claimant's hourly rate was $.49 per hour higher for working in Zone B (sixty miles beyond Courthouse Square in Scranton). Because this additional hourly rate was only paid for jobs worked outside the sixty mile radius of the courthouse, it was not payable to all employees who were travelling, as in *Bechtel* and *Peer, infra*, it was only a percentage of the full rate paid to journeymen travelling and *should* be considered the Employer's "transportation" obligation under the first exception to the coming and going rule.

Most importantly, this apprentice was not able to turn down this job for a job closer to his home under the terms of the CBA without jeopardizing his career as a journeyman electrician which was within one year of completion.

Under Section 16 of the CBA, the employer is required to provide transportation. The Employer instead provided a mere $3.92/day (.49 per hour) which it bargained for, in order to relieve itself of the burden of providing transportation for the employees.

The majority of this Court has now permitted the Employer through the collective bargaining process to avoid compensating employees for injuries sustained in furtherance of its own business. In order to assure a lower paid labor force, the Employer only had to subscribe to a collective bargain for a differential of only 49 cents per hour, which an apprentice had to accept at the risk of unemployment and loss of career. Accepting the travel allowance under this CBA furthers

provisions relating to travel pay:

> *Section 9* When the Employer has no permanent shop located in the jurisdiction of the Union, then under such circumstances Scranton shall be considered the city in which the shop is located.
>
> ....
>
> *Section 16* The employer shall pay for travelling time and *furnish transportation from shop to job*, job to job, and *job to shop*, within the jurisdiction of the Union. On work outside of the jurisdiction of the Union, the Employer shall furnish transportation, board, and all necessary expenses. (Emphasis added.)
>
> *Section 17* No traveling time shall be paid before or after working hours to workmen for traveling to or from any job in the jurisdiction of the Union where workmen are ordered to report on the job.

the Employer's business and Claimant should not be penalized for this.

Consequently, apprentices, such as Claimant, who were forced to travel two hundred miles daily in order to provide the employer with a competitive wage rate and who additionally were subject to being directed to various jobs, not by the union, but directly by the employer were not only travelling primarily for the benefit of the employer, but in doing so, were acting to further the employer's business with little apparent additional personal benefit to the apprentice for the time, risk and cost of travel other than an additional pay of $3.92 per day.

The Commonwealth Court in *Bechtel* and the majority in the present case failed to apply the three-factor analysis set forth in *Kear* to determine whether receipt of monies for travel expenses brings the employee within the course of his employment. These factors are *not* in conflict with either *Peer* or *Bechtel*, since they only outline criteria pertaining to the receipt of travel allowances, which is only *one* factor in determining whether travel meets the "coming and going rule."

The *Kear* court emphasized that it was manifest that the third factor was to be the focus in determining whether the receipt of money for travel expenses brings the employee within the course of his employment.

By undertaking the long, arduous, hazardous ride to Bradford every day in the depths of winter, Claimant greatly furthered the business interest of the Employer. While the additional compensation to Claimant was of minimal benefit to Claimant, Employer realized a tremendous economic advantage. Since no apprentices resided in Bradford, Employer would have been forced to use higher paid journeymen who may or may not choose to accept employment at that time of year in that locale if the Local 81 apprentices had not been required to travel to Bradford to receive a much lower wage with only 49 cents per hour differential added for the time, effort and risk involved.

The instant case provides an excellent example of how the nature and incidents of travel, without regard to payment of travel expenses, was a special circumstance which directly furthered the interests of the Employer and, as a direct consequence of such travel, the Claimant is no longer an able bodied apprentice in the shadow of graduation with a future that would place him as a journeyman electrician, among the highest ranks of the building trades with respect to skill, education, training, compensation and benefits, but is now relegated to contemplating his dream from a wheelchair without the use and feeling of his lower body. Bradford County and its neighbors in the northern tier of Pennsylvania have legitimately earned a reputation for the most severe winters in Pennsylvania, of which this Court should take judicial notice. It is hard to imagine that Claimant chose to travel there in the dead of winter for an extra $3.92 per day and that Employer could have attracted other electricians there for such a pittance.

Far from being an "unusual circumstance" which would eviscerate the coming and going rule, the consistently hazardous road conditions from Scranton through the Pocono mountains, and the surrounding counties in Pennsylvania and New York State into the Bradford area are certainly special circumstances not comparable to the road conditions in the southeast and south central areas of Pennsylvania during those same months. The consistently severe winter weather conditions in certain areas of Pennsylvania are radically different from other areas and definitely are special circumstances within the fourth exception to the coming and going rule which should be considered along with all the other factors, including, but not limited to, travel pay policies, etc., on a case by case basis as we did in *Peer, Kear* and *Bechtel* without searching for an easy answer based almost entirely on one factor. The reason is obvious. When one considers the innumerable variety of travel pay policies in collective bargaining agreements and the basis for their origination, it will only be a matter of time when various circumstances will cause numerous exceptions to also be made to the majority opinion which will ultimately lead to only lip service being paid to the true test of when the travel is in furtherance of the employer's business. The major-

ity opinion has already started such a departure.

The holding in these cases on travel should turn not on one very narrow factor, such as the characterization of a travel allowance, but on whether or not the facts as presented "further the interest of the Employer" as provided by the Act and stated in *Kear.* A worker's compensation benefit should not be dependent upon *private* policies or agreements regarding travel, whether that policy is instituted by a CBA, an Inside Agreement or by a unilateral policy prepared solely by an employer. In collective bargaining negotiations, travel benefits and language setting forth travel pay conditions are too easily compromised and/or exchanged for other more important compensation or benefits, which have no relationship to the coming and going rule. *Kear* should be followed here, not overruled. Likewise, *Peer* and *Bechtel* need not be overruled, either. *Kear, Peer* and *Bechtel* were each decided on their facts in determining whether they were in furtherance of the Employer's business interests. The majority has now enabled employers to collectively bargain away or unilaterally adopt policies to escape their legislatively mandated responsibilities under the Act. I would reverse the WCAB and affirm the decision of the WCJ to award benefits.

Judge SMITH joins this dissent.

